# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **John Doe(s)and Jane Doe(s), on behalf of themselves and others similarly situated,** | ) ) ) | No. 2:22-cv-1736 |
| | ) | |
| **Plaintiffs,** | ) | **CLASS ACTION COMPLAINT** |
| **vs.** | ) | |
| | ) | |
| **Pittsburgh Regional Transit f/k/a Port Authority of Allegheny County (PAT),** | ) ) ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | Filed on Behalf of Plaintiffs |
| | ) | |
| | ) | |
| | ) | |
| | ) | Counsel of Record for This Party: |
| | ) | |
| | ) | James L. Welsh, III, Esquire |
| | ) | PA I.D. No:  58790 |
| | ) | |
| | ) | The Welsh Law Group, LLC |
| | ) | 3875 Franklintowne Court |
| | ) | Suite 130 |
| | ) | Murrysville, PA  15668 |
| | ) | |
| | ) | 724-519-2122 – Phone |
| | ) | 724-519-2097 – Fax |
| | ) | |
| | ) | e-mail: |
| | ) | jwelsh@thewklaw.com |
| | ) | |
| | ) | |
| | ) | JURY TRIAL DEMANDED |

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **John Doe(s)and Jane Doe(s), on behalf of themselves and others similarly situated,** | ) ) ) | No. 2:22-cv-1736 |
| | ) | |
| **Plaintiffs,** | ) | **CLASS ACTION COMPLAINT** |
| **vs.** | ) ) | |
| **Pittsburgh Regional Transit f/k/a Port Authority of Allegheny County (PAT),** | ) ) ) ) | |
| **Defendant.** | ) ) | |
| | ) | Filed on Behalf of Plaintiffs |
| | ) | |
| | ) | |
| | ) | |
| | ) | Counsel of Record for This Party: |
| | ) | |
| | ) | James L. Welsh, III, Esquire |
| | ) | PA I.D. No:  58790 |
| | ) | |
| | ) | The Welsh Law Group, LLC |
| | ) | 3875 Franklintowne Court |
| | ) | Suite 130 |
| | ) | Murrysville, PA  15668 |
| | ) | |
| | ) | 724-519-2122 – Phone |
| | ) | 724-519-2097 – Fax |
| | ) | |
| | ) | e-mail: |
| | ) | jwelsh@thewklaw.com |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| John Doe(s)and Jane Doe(s), on behalf of themselves and others similarly situated, | ) ) ) | No. 2:22-cv-1736 |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| Pittsburgh Regional Transit f/k/a Port Authority of Allegheny County (PAT), | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs, John Doe(s) and Jane Doe(s) ("Plaintiffs" or "Class Representatives"), by and through their counsel, The Welsh Law Group, LLC and James L. Welsh, III, Esquire brings this action on behalf of themselves and all similarly situated current and former employees of Pittsburgh Regional Transit, formerly known as Port Authority of Allegheny County (hereinafter "PAT") against "PAT". With knowledge as to themselves or otherwise upon information and belief, Plaintiffs' allege as follows:

## INTRODUCTION

1.      This is a class action lawsuit to seek damages to redress the deprivation of Plaintiffs' fundamental rights to equal protection under the law and the free exercise of their religion and to be free from religious discrimination in employment.  In addition, Plaintiffs were perceived as disabled by Defendant without reasonable accommodation because of their unvaccinated status.

2.      Plaintiffs assert claims against PAT for unlawful religious discrimination against employees who requested and were denied a reasonable accommodation from Defendant's Covid 19 vaccination mandate.

3.      Plaintiffs also assert claims for those Plaintiffs who were denied a religious exemption and were forced to get vaccination against their will and their sincerely held religious beliefs solely to keep their employment.

4.      Plaintiffs also assert claims for those Plaintiffs who were denied a medical exemption and were forced to get a vaccination against their will solely to keep their employment or were fired because their medical exemption was wrongfully denied.

5.      Lastly, Plaintiffs assert claims for those Plaintiffs who were not given the opportunity, after being informed of the risks and benefits of the vaccine, to make an informed choice to accept or deny the vaccination without consequence in violation of federal law. To put it in plain language, Defendant's vaccine mandate was illegal and/or unconstitutional under Federal law, as Defendant cannot mandate a vaccine that is issued under EUA status.

## PAT's DISCRIMINATORY VACCINATION MANDATE.

6.      Plaintiffs are employees or former employees of Defendant. Plaintiffs were bus drivers or maintenance workers of various types who held sincerely held religious beliefs against receiving the Covid-19 vaccination. Some Plaintiffs had valid medical exemptions signed by their physicians indicating that receiving the vaccination could cause serious injury and/or death. Plaintiffs' religious exemptions were admitted by Defendant as being sincerely held. Some Plaintiffs were coerced into getting the Covid vaccination against their will without informed

consent.  All Plaintiffs were not informed of the risks and benefits of the vaccine and were not given the opportunity to accept or reject the experimental vaccine without consequence.

7.      In January 2022, Defendant announced that all employees must receive a Covid 19 vaccination by March 15, 2022 or face discipline up to and including termination. Defendant also established a purported procedure for employees seeking an exemption to the Covid 19 vaccination mandate on religious or medical grounds. At no time were employees informed that all of the currently available Covid vaccines were issued under EUA only.

8.      It is believed and therefore averred that the above referenced procedure of submitting a religious or medical exemption was nothing more than a sham by Defendant to attempt to comply with federal and state law regarding religious discrimination or violating the ADA for persons with legitimate medical exemptions and for perceiving Plaintiffs as disabled solely because of their unvaccinated status.

9.      It is believed and therefore averred that Defendant instructed the exemption committee to deny all medical and religious exemptions unless a particular employee fell into a designated group of employees who were essential to Defendant's continued operations.

10.     The exemption committee for both religious and medical were comprised of Defendant's employees, none of whom were either schooled or trained in theology or medicine.

11.     The exemption committee members were Inez Colon, Eric Wells, Judy Kalnas , Donald Rivetti, Michael Heidecamp.

12.     Plaintiffs, along with hundreds of other employees, submitted religious and/or medical exemptions to the Covid-19 vaccination mandate to Defendant's attention and in good faith sought an exemption and a reasonable religious and/or medical accommodation.

3

13.     Hundreds of other Plaintiffs got the vaccination against their will because they were not informed by Defendant that they had the absolute right to accept or reject the vaccination after being told of the risks and benefits. In other words, Defendant never obtained informed consent. Defendant apparently believed it had the right to mandate a vaccine that was only available under Emergency Use Authorization ("EUA").

14.     Defendant denied all or virtually all exemption requests it received, regardless of merit. Each form denial letter was dated either February 22, 2022 or February 25, 2022 signed by head of human relations committee, Inez Colon.  The tenor of the letter was simply a denial based on undue hardship. Prior to the blanket denials, Defendant never once engaged in the interactive process with any person to discuss reasonable accommodations.

15.     Whenever any employees, including Plaintiffs, asked for a justification of the denial the Defendant's approved corporate response was:

> "In answer to your question, the exemption review committee reviewed your submission and determined that Port Authority cannot accommodate your exemption request for multiple reasons. While we do not question the sincerity or validity of your religious beliefs due to the number of exemption requests received and the nature of your position where you will have regular contact with others, adequate protections for your safety and the safety of others cannot be provided reasonably and without undue hardship. Consequently, Port Authority is not able to accommodate your request. If there is anything else you wish to submit, please do so before March 15, 2022."

16.     Plaintiffs who submitted medical exemptions were simply denied based on undue hardship and perhaps a statement that the supposed doctor employed or retained by the Defendant disagreed that the vaccine posed a threat of serious injury and/or death. The clear, unstated policy of the Defendant, applicable to all employees, was regardless of the validity of your religious or medical exemption you either got the vaccine or got

fired. To date, Plaintiffs have never been provided with the doctor's name who reviewed and denied the medical exemptions or his or her credentials or C.V.

17.     At no time did Defendant ever question the validity or sincerity of any employees' religious exemption. To the contrary, Defendant presumed and therefore admitted that all religious exceptions were sincerely held for purposes of denying exemptions under the guise of hardship. To allow Defendants now to challenge the sincerity of Plaintiffs' religious beliefs is utter nonsense and calls into question even more Defendant's motives and validity of its hardship argument.

18.     Despite admitting that Plaintiffs' religious beliefs were sincerely held, Defendant refused to participate in any interactive process to determine whether any reasonable accommodation existed. No Plaintiff was ever given the opportunity to discuss reasonable accommodations. Defendant's response at disciplinary hearings was "Your exemption was denied. We are here to discuss whether you are going to get the shot. If not, you're fired."

19.     Defendant's sole basis for denying hundreds of religious exemptions and/or medical exemptions was undue hardship.

20.     Defendant's exemption committee henchman, Eric Wells, when pressed on undue hardship stated: *"The only hardship on the Defendant is your unvaccinated status."*

21.     Prior to March 15, 2022, hundreds of employees with either valid religious and/or medical exemptions that were summarily denied gave in under duress and coercion and got the vaccination against their religious beliefs and/or medical advice from their physician.

5

22.     It is believed and therefore averred that Defendant's exemption review committee was instructed to deny all exemptions so that Defendant could claim it had a 100% vaccination rate. It is further believed, and therefore averred, that Defendant received hundreds of millions of dollars in federal and/or state aid in Covid relief funds for implementing a vaccine mandate. This policy and procedure continued even though Defendant reached its goal of 75% then 80% vaccination.

23.     Even though the number of religious and/or medical exemption requests dwindled significantly prior to March 15, 2022. Defendant at no time changed or revised its position that granting religious and/or medical exemptions was an undue hardship on Defendant. Defendant's policy of complete vaccination continues to exist. Plaintiffs who have inquired about returning to work after being fired are told they must be vaccinated first and then sign a waiver giving up right to sue Defendant in order to return to work.

24.     Even Plaintiffs who had no exposure to the public and worked in an isolated portion of a building with no exposure to fellow employees were fired under the guise of undue hardship.

25.     Many Plaintiffs submitted additional information in support of their religious and/or medical exemption requests prior to the March 15, 2022 deadline. It is believed and therefore averred that no employees' exemption request that was originally denied was then granted based upon providing additional evidence to the exemption committee. To the contrary, it is believed and therefore averred that the exemption committee denied each and every request for reconsideration and/or appeal that Plaintiffs submitted. The decision to rid its workforce of the unvaccinated was the predetermined plan of Defendant, regardless of the merit of Plaintiffs' exemption.

26.     It is believed and therefore averred that Defendant had a policy to deny all exemption requests, regardless of validity, to increase the overall number of vaccinated employees for Defendant's own financial gain.

27.     It is believed and therefore averred, that Defendant had a policy to only grant exemption requests to certain employees that were essential to Defendant's continued operations, such as route foreman and/or dispatchers.

28.     It is believed and therefore averred that certain pre-determined employees were granted exemptions regardless of whether they even submitted an exemption request and regardless of the merit of their exemption.

29.     It is believed and therefore averred that Defendant had no intention of granting religious and/or medical exemption requests to a substantial majority of its workforce and that the practice, policy and procedure of Defendant was to force vaccination on every employee who submitted an exemption. .

30.     Prior to March 15, 2022, Defendant affirmatively told its workforce that wearing masks, social distancing and/or sanitizing would keep Plaintiffs safe from contracting or transmitting Covid. This was Defendant's policy to keep its workforce operating safely for approximately 2 years. Defendant's own CEO, Katherine Kellerman, is on record stating that "transit doesn't spread Covid."

31.     Prior to the March 15, 2022 mandate, Defendant offered the following reasonable accommodations to Plaintiffs without claiming undue hardship:

    a.   Masking;

    b.   Social distancing;

    c.   Sanitizing;

    d.   Spit shields;

    e.   Special seating on buses;

    f.   No seating on buses within 6 feet of an operator;

    g.   All riders had to enter/exit from the rear of the bus;

    h.   Ventilation on buses.

32.     All of the reasonable accommodations listed in paragraph 31 were told to the employees by Defendant that these safeguards would keep Plaintiffs from contracting or transmitting Covid.

33.     All of the reasonable accommodations listed in paragraph 31 prior to March 15, 2022 never constituted an undue hardship on defendant.

34.     Prior to March 15, 2022, Plaintiffs were considered heroes for working throughout the pandemic and were awarded with a refrigerator magnet for their loyalty to Defendant.

35.     After March 15, 2022, all of the reasonable accommodations listed above suddenly became an undue hardship and disappeared in order to force the vaccine mandate on the heroes who worked throughout the pandemic and were told that all of the above-referenced safeguards would keep employees and others from contracting and/or transmitting Covid.

36.     Because of Defendant's unlawful actions in denying all or virtually all meritorious exemption requests Plaintiffs were forced with an immediate "choice" to either (a) receive a Covid 19 vaccination in direct violation of their conscience and sincerely held religious beliefs and/or medical advice from their physicians or (b) be

terminated from their employment with Defendant as a consequence of exercising their fundamental and statutory rights to refuse administration of the Covid-19 vaccines.

37.     As a result of Defendant's discriminatory mandate, Plaintiffs together with scores of other similarly situated employees lost their jobs and incurred substantial damages or were forced to get the vaccine against their conscience and their religiously held beliefs or against their doctor's advice.

38.     Faced with the "choice" of either receiving a religiously objectionable vaccine, risking their health and/or life due to  medical conditions that made the vaccine dangerous or losing their jobs, Plaintiffs under duress were coerced to violate their conscience and/or their doctor's advice and to undergo an irreversible medical procedure, only available under EUA status, to their shame, guilt, sorrow and emotional distress. These Plaintiffs and numerous others like them, incurred substantial damages from Defendant's discrimination in violation of their core religious principles, medical advice from their doctors, and/or their rights to make a decision with informed consent.

39.     Plaintiffs have complied with all requirements for seeking an exemption and accommodation based upon their sincerely held religious beliefs or medical conditions, and otherwise complied with all of the requirements Defendants established for seeking a religious exemption and/or medical exemption from the Covid-19 vaccination policy. Indeed, Plaintiffs have scratched, clawed, begged and pleaded to obtain the relief they seek with both the PHRC and the EEOC without judicial intervention. Those efforts failed as the PHRC sought to protect a fellow governmental agency, sat on complaints, lied, summarily dismissed complaints and withheld

information from Plaintiffs and this suit is now the only mechanism by which Plaintiffs' sincerely held relief beliefs and/or medical exemptions may be vindicated.

40.     Plaintiffs did not seek to harm anyone, nor did they request license to work uninhibited as though no health threat existed. Rather, Plaintiffs offered to continue with all reasonable accommodations that Defendant promised for 2 years that would keep them safe from contracting or transmitting Covid. Many Plaintiffs had absolutely no exposure to the public and/or worked by themselves. Plaintiffs merely sought to protect their sincerely held religious beliefs or follow their doctor's advice not to receive an experimental medical product that neither stops contracting nor transmitting Covid. Plaintiffs were willing to abide by the protections that have been espoused as sufficient to protect against Covid-19 namely wearing a mask, self-monitoring for symptoms, voluntary reporting of symptoms, and reasonable testing requirements. Theses reasonable accommodations plainly provided a sufficient alternative to forced vaccinations that violates sincerely held religious beliefs and medical advice from their doctors.

## **JURISDICTION AND VENUE**

41.     This action arises under the laws of the United States, specifically 21 U.S.C. §360bbb-3, 42 U.S.C. §1983, 42 U.S.C. §200e, et seq., and the First and Fourteenth Amendments to the United States Constitution. This action also arises under the laws of the State of Pennsylvania.

42.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1343 and 1367 and supplemental jurisdiction over Plaintiffs' state law claims. Jurisdiction is also invoked under 42 U.S.C. §200e-5(f). The claims raised under state and federal law constitute the same case and controversy.

10

43.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) and 42 U.S.C. §2000e-5(f) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

44.     This Court is authorized to grant Plaintiffs' prayer for relief regarding damages pursuant to Rule 54 of the Federal Rules of Civil Procedure and the supplementary laws of the State of Pennsylvania, as applicable under Fed.R.Civ P. 69.

45.     This Court is authorized to grant Plaintiffs' prayer for relief regarding costs and expenses, including reasonable attorneys' fees and costs, under 42 U.S.C. §1988, the Pennsylvania Human Relations Act, 43 Pa. CS §951-963.

## PARTIES

a.      **The Class Representative Plaintiffs**

1.      ***The wrongfully terminated Plaintiffs***

46.     The vast majority of Class Representative Plaintiffs are bus operators and maintenance workers who were employed by the Defendant, some for over 20 years and some even close to retirement. Approximately 75 employees submitted valid religious exemptions and/or medical exemptions to the Covid 19 vaccine mandate but were still wrongfully terminated.

47.     An example of this class is John Doe #1, a 20 year employee of Defendant who was employed as a shifter. He had no exposure to the public and little, if any, exposure to other employees.  He submitted a religious exemption which was denied. He submitted additional documentation from his church. He submitted an affidavit offering reasonable accommodations. He submitted co-worker affidavits indicating the people he

worked with or around did not object to his unvaccinated status. Despite all this information, he was fired. He went from hero to zero for exercising his religious beliefs.

48.     Another example is John Doe #2. He was a bus operator for Defendant. Doe #2 submitted a medical exemption from his treating doctor who strongly advised against Doe #2 getting the vaccine because of pre-existing severe anaphylaxis and advised Defendant that the vaccine could kill Doe #2. His medical exemption was denied. Doe #2 then went to Rite-Aid, against medical advice. When Rite Aid heard of Doe#2's pre-existing medical condition, Rite-Aid refused to give him the vaccine. This information was submitted to Defendant and his exemption was still denied. Doe#2 then asked if the doctor used by Defendant to deny his exemption would administer the vaccine to John Doe #2, Defendant refused to request their doctor to administer the vaccine and/or the doctor refused.  John Doe #2 was terminated for failing to get the vaccine. He went from hero to zero for following the advice of his doctor.

49.     Each of the 75 Plaintiffs presented a religious and/or medical exemption and was summarily denied by the exemption review committee by generic form letter dated in late February 2022. The exemption review committee never challenged the validity or sincerity of any Plaintiffs' religious exemption but rather affirmatively stated the exemption committee believes Plaintiffs' religious beliefs against the vaccine are/were valid.

50.     At no time did Defendant ever engage in the interactive process with any Plaintiff to discuss reasonable accommodations. Defendant has attempted to claim that the disciplinary hearing was the interactive process. However, the only accommodation that was offered by employer was get vaccinated or you're fired.

12

51.     Rather than discuss reasonable accommodations, Defendant sought to impose its will of complete vaccination of its workforce by claiming, without merit, undue hardship.

52.     Rather than discuss reasonable accommodations, Defendant claimed undue hardship and denied the exemption requests and terminated the unvaccinated from its payroll.

53.     Each and every reasonable accommodation offered by Defendant for 2 years referenced in paragraph 31 of this complaint suddenly disappeared and was magically deemed to be on undue hardship the second the vaccine mandate took effect on March 15, 2022.

54.     Each of the Wrongfully Terminated Plaintiffs have filed claims with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission. Some Plaintiffs have received their "right to sue" letters from the EEOC. All Plaintiffs have requested their right to sue letters and are expected to be issued soon. Plaintiffs could not wait until all right to sue letters were received because some Plaintiffs have already received their letters and their 90 day deadline is rapidly approaching..

### 2. *The Coerced Plaintiffs*

55.     Multiple Plaintiffs have been forced against their religious beliefs and/or against their own doctors' medical advice to get the vaccine to avoid being fired.

56.     Facing the prospect of permanent job loss and the inability to provide for their family, Coerced Plaintiffs succumbed to Defendant's coercion and accepted a vaccine in violation of the religious convictions and/or their doctor's advice. At no time were coerced Plaintiffs advised that they had the right to accept or deny the vaccine

13

without consequence. At no time did Defendant explain the risks and benefits of the vaccine or obtain Plaintiffs' informed consent. Coerced Plaintiffs experienced sorrow, regret, shame, guilt and other emotional distress and damage as a result of Defendant's discrimination and coercion, and the irreversible medical procedure they were coerced to receive against their religious beliefs or doctor's advice. Many of these Plaintiffs will or may suffer from medical conditions known to include myocarditis, heart attacks, severe blood clotting, strokes and many other illnesses related to the vaccine, including but not limited to serious injury and/or death.

### 3. *The Lack of Informed Consent Plaintiffs*

57.     Hundreds of Plaintiffs, including all Plaintiffs in the wrongfully terminated Plaintiffs, the coerced Plaintiffs, and many others were led to believe, either intentionally or negligently, by the Defendant that they had no valid option to refuse the vaccination mandate or be fired.

58.     These Plaintiffs which include all wrongfully terminated Plaintiffs and coerced Plaintiffs, include hundreds of employees who got the vaccine because Defendant represented the vaccines were fully approved by the FDA. These Plaintiffs were never told of the risks and benefits of the vaccine nor were they told they had the absolute right under federal law to accept or reject the vaccination without consequence.

### b. __The Defendant__

59.     The Private Employer Defendant.

60.     Defendant PAT is a not-for-profit corporation incorporated under the laws of the State of Pennsylvania with its principal place of business in Pittsburgh.

14

## STATEMENT OF FACTS

**A.  Plaintiffs and Their Sincerely Held Religious Beliefs.**

61.     Plaintiffs all have sincerely held religious beliefs that preclude them from complying with Port Authority's Mandatory Covid-19 Vaccination Policy, including but not limited to religious objections to the undisputed connection between all three COVID-19 vaccines (in their origination, production, development, or testing), and the cell lines of aborted fetuses.

62.     A fundamental component of Plaintiffs' sincerely held religious beliefs is that all life is sacred, from the moment of conception to natural death, and that abortion is a grave sin against God and the murder of an innocent life.

63.     Plaintiffs' sincerely held religious beliefs are rooted in Scripture's teachings that "[a]ll Scripture is given by inspiration of God, and is profitable for doctrine, for reproof, for correction, [and] for instruction in righteousness." *2 Timothy* 3:16 (KJV).

64.     Because of that sincerely held religious belief, Plaintiffs believe that they must conform their lives, including their decisions relating to medical care, to the commands and teaching of Scripture.

65.     Plaintiffs have sincerely held religious beliefs that God forms children in the womb and knows them prior to their birth, and that because of this,

15

life is sacred from the moment of conception. *See Psalm* 139:13-14 ("For you formed my inward parts; you knitted me together in my mother's womb. I praise you, for I am fearfully and wonderfully made." (ESV)); *Psalm* 139:16 ("Your eyes saw my unformed substance; in your book were written, every one of them, the day that were formed for me, when as yet there was none of them." (ESV)); *Isaiah* 44:2 ("the Lord that made thee, and formed thee from the womb ..." (KJV)); *Isaiah* 44:24 ("Thus saith the Lord, thy redeemer, and he that formed thee from the womb, I am the Lord that maketh all things." (KJV)); *Isaiah* 49:1 ("The Lord hath called my from the womb; from the bowels of my mother hath he made mention of my name." (KJV)); *Isaiah* 49:5 ("the Lord that formed me from the womb to be his servant" (KJV)); *Jeremiah* 1:5 ("Before I formed thee in the belly I knew thee; and before thou earnest forth out of the womb I sanctified thee, and I ordained thee." (KJV)).

66.     Plaintiffs also have sincerely held religious beliefs that every child's life is sacred because they are made in the image of God. *See Genesis* 1:26-27 ("Let us make man in our image, after our likeness ... So God created man in his own image; in the image of God created he him; male and female created he them." (KJV)).

67.     Plaintiffs also have sincerely held religious beliefs that because life is sacred from the moment of conception, the killing of that innocent life is the murder of an innocent human in violation of Scripture. *See, e.g., Exodus* 20:13 ("Though shalt not kill." (KJV)); *Exodus* 21:22-23 (setting the penalty as death for

even the accidental killing of an unborn child); *Exodus* 23:7 ("the innocent and righteous slay thou not, for I will not justify the wicked." (KJV)); *Genesis* 9:6 ("Whoso sheddeth a man's blood, by man shall his blood by shed: for in the image of God made he man." (KJV)); *Deuteronomy* 27:25 ("Cursed be he that taketh reward to slay an innocent person." (KJV)); *Proverbs* 6:16-17 ("These six things doth the Lord hate: yea, seven are an abomination to him ...   hands that shed innocent blood." (KJV)).

68.     Plaintiffs have sincerely held religious beliefs, rooted in the Scriptures listed above, that anything that condones, supports, justifies, or benefits from the taking of innocent human life via abortion is sinful, contrary to the Scriptures, and must be denounced, condemned, and avoided altogether.

69.     Plaintiffs have sincerely held religious beliefs, rooted in the Scriptures listed above, that it is an affront to Scripture's teaching that all life is sacred for Plaintiffs to use a product derived from or connected in any way with abortion.

70.     Many Plaintiffs believe that God created the perfect immune system and that nothing God did not create should not be put into your body.

71.     Plaintiffs' sincerely held religious beliefs were admitted to by Defendant. Defendants, both in writing and orally, stated that Plaintiffs religious beliefs were sincerely held.   Not one Plaintiffs' religious beliefs were at anytime challenged. Rather, Defendant's sole objection was undue hardship.

**B.     The Covid-19 Vaccines' Link to Aborted Fetal Cell Lines.**

72.     Plaintiffs' sincerely held religious beliefs, rooted in the above Scriptures, preclude them from accepting any one of the three currently available Covid-19

vaccines, because all three vaccines were derived from, produced, manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines.

73.    Plaintiffs have sincerely held religious objections to the Johnson & Johnson (Janssen Pharmaceuticals) vaccine because it unquestionably used aborted fetal cells lines to produce and manufacture the vaccines.

74.    As reported by the North Dakota Department of Health in its handout literature for those considering one of the Covid-19 vaccines, "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson did require the use of fetal cell cultures, specifically PER.CG, in order to produce and manufacture the vaccine."

75.    The Louisiana Department of Health likewise confirms that the Johnson & Johnson Covid-19 vaccine, which used PER.C6 fetal cell line, "is a retinal cell line that was isolated from a terminated fetus in 1985."[2]

76.    Scientists at the American Association for the Advancement of Science have likewise published research showing that the Johnson & Johnson vaccine used aborted fetal cell lines in the development and production phases of the vaccine.[3]

77.    Plaintiffs also have sincerely held religious objections to the Moderna and Pfizer/BioNTech Covid-19 vaccines because both of these vaccines, too, have their origins in research on aborted fetal cells lines.

78.    As reported by the North Dakota Department of Health in its handout literature for those considering one of the Covid-19 vaccines, the Moderna and Pfizer mRNA vaccines are ultimately derived from research and testing on aborted fetal cell lines. In fact, "[e]arly in the development of mRNA vaccine technology, fetal cells were used for 'proof of concept' (to

demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein."[4]

79. The Louisiana Department of Health's publications again confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their Covid-19 mRNA vaccines.[5]

80. Therefore, Defendant's pretext for excluding religious beliefs premised on the demonstrable and undeniable association between all three Covid-19 vaccines and aborted fetal cell lines was patently false, and the exclusion of those beliefs was unlawful and discriminatory.

---

[1] *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), https://www.health.nd.gov/sites/www/files/documents/COVID%J20Vaccine%20Page/ COVID-19 Vaccine_Fetal_Cell_Handout.pdf (last visited Aug. 2, 2021) (bold emphasis original).

[2] Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), https://ldh.la.gov/assets/oph/Center- PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pelf (last visited Aug. 2, 2021) (emphasis added).

[3] Meredith Wadman, *Vaccines That Use Human Fetal Cells Draw Fire,* Science (June

[4] *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/ COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last visited Aug. 2, 2021) (emphasis added).

[5] Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), https://ldh.la.gov/assets/oph/Center- PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pelf (last

81.     Because all three of the currently available Covid-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines HEK-293 and PER.C6, Plaintiffs' sincerely held religious beliefs compel them to abstain from obtaining or injecting any of these products into their body, regardless of the perceived benefit or rationale.

82.     In addition, Plaintiffs have sincerely held religious beliefs that their body is the temple of the Holy Spirit, and to inject medical products that have any connection whatsoever to aborted fetal cell lines would be defiling the Temple of the Holy Spirit. *(See 1 Corinthians* 6: 15-20 ("Know ye not that your bodies are the members of Christ? shall I then take the members of Christ and make them members of an harlot? God forbid .... What? Know ye not that your body is the temple of the Holy Ghost which is in you, which have of God, and ye are not your own? For ye are bought with a price: therefore glorify God in your body, and in your spirit, which are God's." (KJV)).

83.     While there may be some faith leaders and other adherents whose understanding of Scripture is different, and who may be willing to accept one of the three currently available Covid-19 vaccines despite their connection with aborted fetal cell lines, Plaintiffs' sincerely held religious beliefs compel them to adhere to the truth that the testing, development, production, or other connection to aborted fetal cell lines is morally and Scripturally unacceptable and an affront to Scripture's teachings that God values all human life, and that abortion-in all of its manifestations and with all of its so-called "benefits"- is a grave sin in which Plaintiffs cannot participate.

84.     In addition to their sincerely held religious beliefs that compel them to abstain from any connection to the grave sin of abortion, Plaintiffs have sincerely held religious beliefs that the Holy Spirit-through prayer and the revelation of Scripture-guide them in

20

all decisions they make in life.

85.     Plaintiffs have sincerely held religious beliefs that Jesus Christ came to this earth, died on the cross for their sins, was resurrected three days later, and that when He ascended to Heaven, He sent the Holy Spirit to indwell His Believers and to guide them in all aspects of their lives. *See John* 16:7 ("Nevertheless I tell you the truth, it is expedient for you that I go away: for if I go not away, the Comforter will not come unto you; but if I depart, I will send him unto you." (KJV)); *John* 14:26 ("But the Comforter, which is the Holy Ghost, whom the Father will send in my name, he shall teach you all things, and bring all things to your remembrance, whatsoever I have said unto you." (KJV)).

86.     Plaintiffs have sincerely held religious beliefs that the Holy Spirit was given to them by God to reprove them of righteousness and sin and to guide them into all truth. *See John* 16:8,13 ("And when he is come, he will reprove the world of sin, and of righteousness, and of judgment … when he, the Spirit of truth, is come, he will guide you into all truth: for he shall not speak of himself; but whatsoever he shall hear, that shall he speak: and he will shew you things to come." (KJV)).

87.     Plaintiffs also have sincerely held religious beliefs that they shall receive all answers to their questions through prayer and supplication, including for decisions governing their medical health. *See James* 1:5 ("If any of you lack wisdom, let him ask of God, that giveth to all men liberally, and upbraideth not; and it shall be given him." (KJV)); *Mark* 11:24 ("Therefore I say unto you, What things soever ye desire, when ye pray, believe that ye receive them, and ye shall have them." (KJV)); *Philippians* 4:6-7 ("but in everything by prayer and supplication with thanksgiving

let your request be made known to God. And the peace of God, which passeth all understanding, shall keep your hearts and minds through Christ Jesus." (KJV)); *1 John* 4:14-15 ("And this is the confidence we have in him, that, if we ask anything according to his will, he heareth us. And if we know that he hear us, whatsoever we ask, we know that we have the petitions that we desired of him." (KJV)).

88.     Through much prayer and reflection, Plaintiffs have sought wisdom, understanding, and guidance on the proper decision to make concerning these Covid-19 vaccines, and Plaintiffs have been convinced by the Holy Spirit in their beliefs that accepting any of the three currently available vaccines is against the teachings of Scripture and would be a sin.

89.     Plaintiffs have sincerely held religious beliefs that compel them to follow the teachings of the Holy Spirit, who has not given them peace or comfort to accept any of the three currently available Covid-19 vaccines.

90.     Plaintiffs have sincerely held religious beliefs that they are being guided and instructed by the Holy Spirit not to accept any of the three currently available Covid-19 vaccines and that it would be a sin against God to do so.

91.     Plaintiffs have shared these religious beliefs, and others, with Defendants and have asked Defendants for exemption and reasonable accommodation for these beliefs, but Defendant has unlawfully and callously refused.

## GENERAL ALLEGATIONS AGAINST DEFENDANT PAT

### A. Defendant's Discriminatory Covid-19 Vaccination Mandate.

92.     In January, 2022, Defendant announced a policy mandating Covid-19 vaccines for all of its 3,000 employees.  The Mandatory Covid-19 Vaccination Policy

states that the "requirement applies to all PAT employees."

a.    The Mandatory Covid-19 Vaccination Policy ordered that all Defendant's employees "fully vaccinated" by March 15, 2022.

b.    Employees who were unvaccinated by the March 15 deadline were subject to discipline up to and including termination.

c.    The Mandatory Covid-19 Vaccination Policy does not take into account individuals who have already recovered from Covid-19 and thus have antibodies or natural immunity. Nor does it take into account alternative measures such as face coverings, personal protective equipment, self-monitoring and reporting of symptoms, or periodic testing.

d.    In its Mandatory Covid-19 Vaccination Policy, Defendant purported to permit employees to obtain religious and/or medical exemptions from the mandate, but as explained below, that process was a sham, because Defendant never intended to grant exemptions or accommodations for all or virtually all of its employees who requested them.

e.    Defendant's Mandatory Covid-19 Vaccination Policy contrasts with the Federal Government's rule to require certain large employers to mandate vaccination or periodic testing for their employees. *See* 86 Fed. Reg. 61402 (2021) (stayed on January 13, 2022, on other grounds in *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.,* 142 S. Ct. 661 (2022)). Defendant does not provide a testing alternative for any of its employees for those with sincerely held religious beliefs and/or medical conditions, as the Federal Government contemplated to be sufficient.

f.    Defendant's Mandatory Covid-19 Vaccination Policy contrasts with the

Centers for Medicare and Medicaid Services' (CMS) interim final rule imposing a Covid-19 vaccination mandate on facilities receiving Medicare and Medicaid funding. 86 Fed. Reg. 61557-61558. As the Supreme Court noted, CMS' rule **"requires** providers to offer medical and religious exemptions." *Eiden v. Missouri,* 142 S.Ct. 647, 651 (2022) (emphasis added).

g.      The Mandatory Covid-19 Vaccination Policy also differs substantially from the European Union's digital Covid-19 certificate, which considers the following as equivalent: (1) a Covid-19 vaccine; (2) a negative Covid-19 test; or (3) having previously recovered from Covid-19.[7]

h.      Defendant's refusal to exempt and accommodate its employees' sincerely held religious convictions and/or medical exemptions is the product of Defendant's animus towards, and discrimination against, its employees because of their religious beliefs or their pre-existing medical conditions.

i.      Defendant's religious and/or medical animus and discrimination are further evidenced by the fact that, while Defendant requires its employees to be vaccinated and refuses to accommodate its religiously-objecting or medically objecting employees, Defendant does not require Passengers or sub-contractors in its facility to be vaccinated, even though these individuals interact with Defendant on a daily basis. If Defendant were concerned about potential "outbreaks" caused by unvaccinated people on its premises or buses, Defendant would not exempt large groups of people on its premises or buses, while refusing to exempt only employees who object to vaccination on religious and/or medical grounds.

---

[7]      *See EU Digital COVID Certificate,* European Commission, https://ec.europa.eu/info/live-work-travel-eu/coronavirus-response/safe-Covid-19-   vaccines-europeans/eu-digital-Covid-certificate_en (last accessed Jan. 31, 2022).

j.      Defendant's religious and/or medical animus and discrimination are further evidenced by the fact that, while Defendant requires its employees to be vaccinated and refuses to accommodate its religiously and/or medically objecting employees, Defendant provided exemptions for its employees who are route foreman and dispatchers and possibly other people who were pre-determined to be exempt.

**Defendant's Unlawful Refusal to Accommodate Plaintiffs' Religious Beliefs and/or Medical Conditions.**

93.      As mentioned above, Defendant's Mandatory Covid-19 Vaccination Policy provided employees, in theory but not in practice, the illusory ability to obtain a religious and/or medical exemption and accommodation from the vaccine mandate.

94.      In submitting their requests for religious and/or medical exemptions, each of the Plaintiffs followed the directions given to them by Defendant, and complied fully with Defendant's purported requirements.

95.      Defendant's generic denials were purportedly because all of the requests failed to meet some phantom "undue hardship" that Defendant never provided its employees in advance. The Exemption Forms contained no "criteria," "evidence-based" or otherwise, to guide employees as to what information or "evidence" Defendant was seeking.

96.      Even though Defendant's employees went far above and beyond what Defendant itself requested, and submitted detailed letters explaining the basis of their sincerely held religious beliefs and/or medical opinion against the vaccine, Defendant ultimately and uniformly denied all exemptions for no reason at all, except

for some unknown, phantom "undue hardship".

97.    It is clear from Defendant's denials, that Defendant never intended to grant any of these exemption requests to begin with, and that its entire exemption process was a sham. Indeed, Defendant's express statement of undue hardship rendered most, if not all, of those exemption requests an exercise in futility.

98.    Therefore, Defendant's provision for a religious and/or medical exemption was a sham; and its practice, with the exception of an isolated unexplainable exception, was to simply deny religious exemptions *en masse* with boilerplate language, for unlawful reasons.

99.    As a result, Defendant failed to engage with the individual Plaintiffs, and with all of its similarly situated employees, in good faith in the interactive process contemplated by Title VII. The failure to engage in the interactive process highlights the intentions of Defendant: Get the jab or you're gone.

**A.    Rule 23 Class Definition.**

100.    Plaintiffs are current and former Defendant employees who requested religious and/or medical exemptions and accommodations from the Mandatory Covid-19 Vaccination Policy and had those requests denied, expressly or constructively.

101.    Plaintiffs seek to represent the following Rule 23 Class:. All current and former Defendant's employees who sought a religious and/or medical exemption and accommodation to Defendant's Covid-19 vaccination policy and were denied. In addition, Plaintiffs seek to represent all Plaintiffs who got the vaccination because

26

they believed they had no choice under Federal law to accept or reject the vaccination without consequence.

102.   To streamline the claims and damages in this litigation, Plaintiffs also seek to represent the following subclasses:

(a)   Defendant employees who requested but were denied religious and/or medical accommodation to Defendant's Covid-19 vaccination policy, and were terminated for their non-compliance with Defendant's Covid-19 vaccination policy (the "Terminated Class"); and

(b)   Current or former Defendant employees who were threatened with termination because of their Covid-19 vaccination status but ultimately complied with Defendant's vaccination policy under coercion and duress in conflict with their sincerely held religious beliefs and/or medical exemptions (the "Coerced Class").

(c)   Current or former Defendant's employees who got the vaccination without informed consent because the available vaccination were all under EUA status and could not be mandated without informed consent.

103.   The system-wide discrimination described in this Complaint has been, and is, continuing in nature.

104.   Plaintiffs reserve the right to amend the class definitions based on discovery or legal developments.

**B.      Efficiency of Class Prosecution of Class Claim.**

105.   Certifying the proposed Class and Subclasses is the most efficient and economical means of resolving the questions of law and fact common to the claims of Plaintiffs and the Class.

106.   The individual claims of Plaintiffs as Class Representatives require

resolution of common questions of whether Defendant's no-religious and/or medical exemption vaccination policy discriminates on the basis of religion and/or the ADA, and whether its policy adversely effects the Class. The Class Representatives seek remedies to eliminate the adverse effects of Defendant's discriminatory policy in their own lives, careers, and working conditions as well of those of the Class members, and to prevent Defendant's ongoing religious and/or medical discrimination.

107.    The Class Representatives have standing to seek such relief because they each have suffered adverse employment actions as a result of Defendant's discriminatory policies and practices. Similarly, Defendant's policies and practices have violated the Class Representatives' protected conscience and religious and/or medical rights. These injuries are redressable through equitable and injunctive relief and other remedies sought in this action. Plaintiffs have a personal interest in Defendant's employment policies, practices, and procedures.

108.    To obtain relief for themselves and the Class members, the Class Representatives allege that their objections to Covid-19 vaccination are religious and and/or medical in nature, that Plaintiffs brought their religious beliefs and/or medical exemptions and need for accommodation to Defendant's attention, and that Plaintiffs' religious and/or medical objection to the mandatory vaccine was the basis for their discharge and discriminatory treatment. Without class certification, the same factual and legal issues would be litigated in a multitude of individual lawsuits, risking inconsistent adjudications and conflicting results.

109.    Certification of the proposed Class and Subclasses is the most

reasonable and efficient means of presenting the evidence and argument necessary to resolve the underlying dispute for the Class Representatives, the Class members, and Defendant.

## C.      Requirements of Rule 23(a).

### 1.      Numerosity and Impracticability of Joinder.

110.    The Class is so numerous that joinder of all members is impractical. By Defendant's own account, well over 350 employees sought a religious and/or medical exemption from the vaccination mandate. In addition, hundreds of employees got the vaccination believing they had no choice but to get it or get fired. These Plaintiffs were never given the right to accept or reject the vaccine without consequence and certainly never gave their informed consent. The precise number and identification of the class members will be ascertainable from Defendant's records during discovery. It is believed, and therefore averred, that approximately 700+ employees may fall into the classes of Plaintiffs wronged by Defendant's discriminatory policies.

### 2.      Common Questions of Law and Fact.

111.    There are questions of law and fact common to all members of the class. Those common questions include, but are not limited to, the following:

    a. Did Defendant comply with federal and state law when it indiscriminately denied religious and/or medical exemptions and accommodation requests *en masse?*

    b. Did Defendant comply with federal and state law when it informed the Plaintiffs that it would be an "undue hardship" on Defendant for them to keep their current positions, irrespective of any alternative safety measures that Plaintiffs are willing to undertake, and that other transportation employees in Pennsylvania and throughout the country allow their employees to undertake?

c.  Did Defendant violate federal and state law when it granted selected individuals religious exemption requests, and provided reasonable accommodation, even while denying Plaintiffs' similar requests?

d.  Did Defendant comply with its obligations under federal law to engage in the interactive process when responding to each exemption request?

e.  Did Defendant provide an adequate mechanism for requesting and obtaining a religious and/or medical exemption and then denied them based on undue hardship with no interactive process?

f.  Did Defendant explain to Plaintiffs that they had to right to accept or reject the vaccination without consequences because all available vaccines were under EUA status and were therefore incapable of being mandated?

g.  Did the removal of all reasonable accommodations that were in place for 2 years without hardship on Defendant suddenly become an undue hardship?

h.  Was Defendant's entire exemption process a sham to force its will on its workforce to get vaccinated or get fired?

**3.     Typicality of Claims and Relief Sought.**

112.   The Class Representatives' claims are typical of the claims of the proposed Class and Subclasses. The Class Representatives possess and assert each of the claims they aver on behalf of the proposed Class and Subclasses, and they pursue the same factual and legal theories and seek similar relief. For example, each class representative and proposed member requested religious and/or medical exemptions and religious and/or accommodations from the Mandatory Covid-19 Vaccination Policy, and Defendant denied those requests. And each class representative and proposed class member suffered an adverse employment action as a result of Defendant's discriminatory policies and procedures.

113.   The relief necessary to remedy the Class Representatives' claims is the same as the relief necessary to remedy the claims of the proposed Class members.

114.    The Class Representatives seek the following relief for their individual claims and for the claims of the members of the proposed Classes:

(a) a declaratory judgment that Defendant has discriminated against employees with sincerely held religious and/or medical objections to Covid-19 vaccination by, among other actions, (i) denying reasonable accommodations; (ii) threatening to terminate or terminating employees who objected to the mandate; and (iii) otherwise subjecting them to discriminatory treatment on account of their religious beliefs and/or medical conditions and objection to the mandatory vaccination policy;

(b) a permanent injunction against Defendant's discriminatory vaccination policy;

(c) equitable and injunctive relief that effects a restructuring of Defendant's policies, practices, and procedures for considering religious and/or medical exemption requests to mandatory medical procedures;

(d) back pay, front pay, reinstatement, and other equitable remedies necessary to make religious employees and/or employees with pre-existing medical conditions whole from Defendant's past discrimination;

(e) compensatory damages;

(f) punitive damages to deter Defendant from engaging in similar discriminatory practices; and

(g) reasonable attorneys' fees, costs, and expenses.

**4.    Adequacy of Representation.**

115.    The Class Representatives' interests are coextensive with the interests of the proposed Class members. Accordingly, Plaintiffs will fairly and adequately protect the interests of the Class.

116.    The Class Representatives' experiences are capable of repetition, yet evading review. To the extent that the terminated Class Representatives are ineligible for reinstatement at Defendant, their experiences-namely, suffering religious and/or discrimination, being terminated or constructively discharged from Defendant, facing ostracization and humiliation as result of Defendant's policies- will continue to affect other religious and/ medical employees unless those injuries are redressed and remedied.

117.    The Class Representatives are willing and able to represent the proposed

31

Class fairly and vigorously as they pursue their similar individual claims in this action.

118.    The Class Representatives have retained counsel that are experienced and qualified to litigate Plaintiffs' claims and to meet the demands of a complex employment discrimination class action. The dedication, experience, and resources of the Class Representatives and their counsel to litigate the individual and class claims at issue in this case satisfy Rule 23(a)(4)'s adequacy of representation requirement.

**D.    Requirements of Rule 23(b)(2).**

119.    Defendant has acted on grounds generally applicable to the Class Representatives and the proposed Class and Subclasses by adopting and implementing system wide policies, practices, and procedures that discriminate on the basis of religion and/or pre-existing medical conditions. Through its no-religious-exemption and/or medical exemption Covid-19 vaccination mandate, Defendant has adopted religious and/or medical discrimination as part of its standard operating procedure.

120.    Defendant has acted or refused to act on grounds generally applicable to the Class Representatives and proposed Class by, among other actions, adopting and implementing a mandatory vaccination policy that provides no religious and/or medical accommodations and subjects non-complying employees to termination or other adverse employment actions.

121.    Defendant's universal Covid-19 vaccination policy and its corresponding refusal to act on nondiscriminatory grounds justify the requested injunctive and declaratory relief for the whole Class.

122.    Injunctive, declaratory, and affirmative relief are the predominant forms of relief sought in this case. Entitlement to declaratory, injunctive, and affirmative relief flows automatically and directly from proof of Defendant's religiously discriminatory policies, practices, and procedures. In turn, entitlement to declaratory, injunctive, and

affirmative relief forms the factual and legal predicate for recovery by the Class Representatives and Class members of monetary and non- monetary remedies for individual losses caused by the systemic discrimination, as well as their recovery of compensatory and punitive damages.

**E.    Requirements of Rule 23(b)(3).**

123.    The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating Plaintiffs' claims. The common issues include whether Defendant has engaged in religious and/or medical discrimination by refusing to reasonably accommodate employees' requests for an exemption from its Covid-19 vaccination mandate and for its disparate treatment of its employees who had religious and/or medical objections to Covid-19 vaccination.   In addition, did Defendant perceive unvaccinated individuals as disabled without reasonable accommodations.

124.    A class action is superior to other available means for fairly and efficiently adjudicating the claims of the Class Representatives and the members of the proposed Class.

125.    By virtue of Defendant's pattern and practice of discrimination, the Class Representatives and Class members are eligible for monetary remedies for losses caused by Defendant's discrimination, including back pay, reinstatement, compensatory damages, and other relief.

**COUNT** I

**VIOLATION OF TITLE VII, 42 U.S.C. § 2000e,** *et seq.*

**Religious Discrimination - Failure to Accommodate**
**(All Plaintiffs against Defendant)**

126.    Plaintiffs hereby reallege and adopt each and every allegation in the preceding paragraphs as if fully set forth herein.

127.    Plaintiffs have all filed a timely charge with the EEOC and/or the PHRC. The EEOC issued right-to-sue letters to Plaintiffs and is expected to issue right to sue letters to remaining Plaintiffs. Other Plaintiffs are awaiting right-to-sue letters from the DOJ.

128.    Title VII of the Civil Rights Act of 1964 prohibits Defendant from discriminating against its employees on the basis of their sincerely held religious beliefs. *See* 42 U.S.C. §2000e-2(a).

129.    Plaintiffs hold sincere religious beliefs that preclude them from receiving a Covid-19 vaccine.

130.    Plaintiffs informed Defendant of those beliefs and requested religious exemptions and reasonable accommodations from the vaccine mandate.

131.    Defendant failed to engage in the interactive process with Plaintiffs regarding their religious accommodation requests.

132.    Irrespective of the interactive process, Defendant failed to provide Plaintiffs with religious exemptions and reasonable accommodations, thereby discriminating against Plaintiffs because of their religious beliefs and/or medical conditions.

133.   Plaintiffs' religious beliefs about receiving a Covid-19 vaccine was the basis for Defendant's discriminatory treatment.

134.   Defendant's failure to provide religious exemptions and reasonable accommodations has harmed and will continue to harm the Plaintiffs.

135.   Accommodating Plaintiffs' religious beliefs would not have resulted in an undue hardship on Defendant or its business. Any hardship claimed by Defendant was self-imposed.

136.   By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

137.   Plaintiffs entitled to all legal and equitable remedies available for Title VII violations, including compensatory and punitive damages.

## COUNT II

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED ("ADA") 42 USC §§ 12111, *et* seq:

### DISCRIMINATION ON THE BASIS OF PERCEIVED DISABILITY

138.   Each of the preceding paragraphs are hereby incorporated by reference.

139.   Plaintiffs are "qualified individuals" who are employees of Defendant, as defined under the ADA. 42 USC 12111(4), (8). Plaintiffs performed the essential functions of their positions admirably for many years, and performed the essential functions of their positions using recommended measures for protection from Covid-19 infection, including performing most of their duties, wearing face masks, social distancing, sanitizing, and undergoing regular Covid-19 tests.

140.   Under the terms of the ADA, one is considered to have a disability if he or

35

she: has "(A) a physical or mental impairment that substantially limits one or more of that person's major life activities; (B) has a record of such impairment; or (C) is regarded as having such an impairment.         " 42 U.S.C § 12102(1).

141.     To establish a disability under the third definition, being regarded as having an impairment, the ADA provides:

    a.     An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

    b.     Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 USC§ 12102(3).

142.     Covid-19 is not transitory and minor.[6]  At all relevant times material to this action, Covid-19 was a well-known, highly contagious, and sometimes deadly virus that has resulted in an ongoing global pandemic.[7] Furthermore, Defendant's Vaccine Policy confirms Defendant's belief that Covid-19 was neither transitory nor minor.

_____

[6] Circuit courts deciding ADA cases involving Covid-19 differ in the opinion of whether Covid-19 is a disability. *Champion v. Mannington Mills, Inc.,* No. 5:21-cv-00012-TES, 2021 U.S. Dist. LEXIS 89381, *1 (M.D. Ga. May 10, 2021) (opining it would be absurd to hold that workers who contracted Covid-19 were "disabled") *cf Matias v. Terrapin House, Inc.,* No. 5:21-cv-02288, 2021 U.S. Dist. LEXIS 176094, 2021 WL 4206759, at *4 (E.D. Pa. Sept. 16, 2021) (citing agency guidance to conclude that Covid-19 may be an ADA disability as it is not always transitory and is not minor).

[7] The World Health Organization provides a Covid-19 Dashboard which reports the number of cases reported in a 24 hour period, the cumulative cases, and the cumulative deaths. See https://Covid19.who.int/ The United States dashboard numbers are *available at:* https://Covid19.who.int/region/amro/country/us (last accessed April 5, 2022).

143. Plaintiff's objected to mandatory Covid-19 vaccination, as required by Defendant for certain employees, including Plaintiffs. Plaintiffs submitted medical exemptions from the requirement and suggested proposed reasonable accommodation, which were the precautions Plaintiff had taken since the beginning of the Covid-19 pandemic, in or around March of 2020. These were the exact precautions that Defendant promised, if followed, would keep Plaintiffs from contracting or transmitting Covid.

144. Multiple Plaintiffs submitted medical reports or records from their treating physicians that indicated receiving the vaccination put Plaintiffs at risk of severe injury and/or death. Plaintiffs that submitted medical exemptions were summarily denied by Defendant without the benefit of having Defendant's doctor ever exam any Plaintiff or given the benefit of seeing why Defendant's doctor was more credible than Plaintiffs' doctor. Rather, medical exemptions were summarily denied without explanation to Plaintiffs.

145. The assumptions made by Defendant after receiving notice of Plaintiffs' medical status as unvaccinated against Covid-19 were used to justify Defendant's incorrect and unlawful determination that Plaintiffs could not perform their job duties because they were disabled and would put the public and/or other employees at risk. This assumption is not based on any reasonable understanding of the facts regarding Plaintiff's ability to perform their essential job duties with or without accommodation. There was no factual support for the idea that Plaintiffs perform their essential job duties with the use of previously accepted methods of personal safety and protection.

146. Defendant failed to make any individualized risk assessment regarding Plaintiffs' perceived disabilities. Defendant terminated Plaintiffs from their employment or forced or coerced Plaintiffs under duress to submit to the vaccination in order to maintain their employment.

37

147. Defendant's unlawful discrimination is the direct and proximate cause of deprivation of Plaintiff's equal employment opportunities and their economic and non-economic damages. Defendant's unlawful conduct has caused Plaintiffs' damages, including but not limited to, lost wages, future loss of income, job search expenses; and emotional distress from the violation of his civil rights, from humiliating mistreatment and discrimination, and from being singled out among other employees for a perceived disability, despite Defendant's acceptance of other unvaccinated employees because they were deemed more essential than Plaintiffs.

148. The conduct of Defendant was so willful and wanton and in such reckless disregard of the statutory rights of Plaintiffs so as to entitle them to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

WHEREFORE, Plaintiff requests that this Court enter a judgment in favor of Plaintiff and against Defendant, reverse Plaintiff's termination, order Defendant to reinstate their employment, and award Plaintiffs' back pay damages, with interest, reasonable attorney's fees and costs, and any other relief that the Court deems proper, including but not limited to, punitive damages for Defendant's malicious deprivation of Plaintiffs' rights.

## COUNT III

### VIOLATION OF TITLE VII, 42 u.s.c. § 2000e, *et seq.*

### Religious Discrimination - Disparate Treatment
### (All Plaintiffs against Defendant)

149.   Plaintiffs hereby reallege and adopt each and every allegation in the preceding paragraphs as if fully set forth herein.

150.   Plaintiffs have all filed a timely charge with the EEOC. The EEOC is expected to issue right to sue letters to Plaintiffs in their near future.

151.   Title VII makes it illegal for an employer "to discriminate against any

38

individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of religion. 42 U.S.C. § 2000e-2(a)(l).

152.   Defendant engaged in an intentional, company-wide and systemic policy, pattern, and practice of religious discrimination against the Plaintiff Class Representatives and the Class Members by, among other actions: maintaining a discriminatory mandatory vaccination policy that provided no religious exemption mandated by federal law; failing to reasonably accommodate Plaintiffs' sincere religious beliefs and objections to the Covid-19 vaccination; discriminatorily pressuring Plaintiffs to forego their religious beliefs and conscience to subject themselves to an unwanted medical procedure; and other forms of discrimination.

153.   At a minimum, by imposing the Covid-19 vaccination mandate on Plaintiffs and deliberately refusing to reasonably accommodate Plaintiffs' sincerely held religious objections to the vaccination, Defendant intentionally discriminated against Plaintiffs on the basis of their religious beliefs and practices.

154.   Defendant's intentionally disparate treatment was motivated by discriminatory animus toward Plaintiffs' sincere religious objections to the Covid-19 vaccines.

155.   As a result of Defendant's disparate treatment, the Plaintiff Class Representatives and the Class Members all suffered adverse employment actions-including, but not limited to, termination of employment, constructive discharge, or threat of discharge for noncompliance with the mandate-that materially and adversely changed the overall terms and conditions of their employment, in violation of Title VII.

156.   As a result of Defendant's disparate treatment, Defendant has treated

Plaintiffs differently from, and less preferentially than, similarly situated employees with no religious objections to an ethically objectionable medical procedure.

157.    Defendant has failed to prevent, respond to, investigate, and appropriately resolve its policy and practice of religious discrimination.

158.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, in callous disregard to Plaintiffs' rights, thereby entitling Plaintiffs to punitive damages.

159.    Because of the continuous nature of Defendant's discriminatory policy and practice, Plaintiff Class Representatives and the Class are entitled to application of the continuing violations doctrine to all violations alleged in this Complaint.

160.    Plaintiffs are entitled to all legal and equitable remedies available for Title VII violations, including compensatory and punitive damages.

161.    As result of Defendant's conduct alleged in this Complaint, Plaintiff Class Representatives and the Class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, including interest.

162.    As a further result of Defendant's unlawful conduct, Plaintiff Class Representatives and the Class have suffered and continue to suffer damages, humiliation, embarrassment, emotional and physical distress, and mental anguish. Plaintiff Class Representatives and the Class are entitled to recover damages for such injuries from Defendant under Title VII.

## COUNT IV

## VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq.*

## Wrongful Termination

163.    Plaintiffs hereby reallege and adopt each and every allegation in the preceding paragraphs as if fully set forth herein.

40

164.    Plaintiffs each filed a timely charge with the EEOC on behalf themselves and the Class Members.

165.    Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion." 42 U.S.C. § 2000e-2(a)(l).

166.    At the time of the discrimination, Plaintiffs were Defendant employees-qualified in all respects to do their jobs competently-with sincere religious objections to receiving Covid-19 vaccines.

167.    Defendant terminated the employment of Plaintiffs after Plaintiffs refused to violate their conscience by subjecting themselves to Defendant's vaccination mandate.

168.    Defendant's termination of Plaintiffs was an adverse employment action that materially and adversely changed the overall terms and conditions of their employment, in violation of Title VII.

169.    Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, in callous disregard to Plaintiffs' rights, thereby entitling Plaintiffs to punitive damages.

170.    Plaintiffs are entitled to all legal and equitable remedies available for Title VII violations, including compensatory and punitive damages.

## COUNT V

**VIOLATION OF EMERGENCY USE AUTHORIZATION PROVISIONS OF THE UNITED STATES CODE, 21 U.S.C. §360bbb-3, *et seq.***

**(All Plaintiffs against Defendant)**

171.    Plaintiffs hereby reallege and adopt each and every allegation in

41

preceding paragraphs as if fully set forth herein.

172.   The United States Code provides that:

> **subject to the provisions of this section,** the Secretary (of the Department of Health and Human Services) may authorize the introduction into interstate commerce, during the effective period of a declaration under subsection (b), of a drug, device, or biological product intended for use in an actual or potential emergency (referred to in this section as an "emergency use."

21 U.S.C. §360bbb-3(a)(l) (emphasis added).

173.   For ease of reference, Plaintiffs will refer to the general provisions of 21 U.S.C. §360bbb-3 as the "Emergency Use Authorization Statute" or "EUA Statute."

174.   Part of the explicit statutory conditions for an Emergency Use Authorization under the Emergency Use Authorization statute, the statute mandates that all individuals to whom the product approved for Emergency Use may be administered be given the option to accept or refuse administration of the product.

175.   Specifically, 21 U.S.C. §360bbb-3(e)(l)(A)(ii)(III), states:

> With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(l), shall for a person who carries out an activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the following Appropriate conditions designed to ensure that individuals to whom the product is administered are informed-

> (I) that the Secretary has authorized the emergency us of the product;

> (II) of the significant known potential benefits and risks of such use, and of the extent to which such benefits are unknown; and

> (III) of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of

the alternatives to the product that are available and of their benefits and risks.

21 U.S.C. §360bbb-3(e)(l)(A)(ii)(I)-(III) (emphasis added).

176.    Put simply, the Emergency Use Authorization statute provides that, as a condition of receiving authorization for Emergency Use, all individuals to whom the product may be administered are given the right to accept or refuse administration of the product.

177.    At the time of the mandate, the only currently available Covid-19 vaccines (Janssen/Johnson & Johnson, Moderna, and Pfizer/BioNTech) are only authorized for use under the Emergency Use Authorization statute and have no general approval under the United States Code.

178.    Because all three of the currently available Covid-19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute mandates that all individuals to whom the product may be administered, including Plaintiff/, be given the right to accept or refuse administration of the product.

43

179.    The recent FDA biologics license application (ELA) approval of the product COMIRNATY, Covid-19 Vaccine, mRNA, manufactured by BioNTech Manufacturing GmbH,[20] **does not change the EUA status** of the Pfizer-BioNTech Covid-19 Vaccine that has been available under EUA since December 23, 2020.[21] According to the EUA extension letter issued by the FDA to Pfizer on August 23, 2021, the Pfizer-BioNTech Covid-19 Vaccine and BioNTech's COMIRNATY, COVID-19 Vaccine, mRNA **"are legally distinct"** products.[22]

180.    Moreover, the now "approved" COMIRNATY vaccine cannot be distributed for use until BioNTech submits "final container samples of the product in final containers together with protocols showing results of all applicable tests" and BioNTech receives "a notification of release from the Director, Center for Biologics Evaluation and Research (CBER)."[23] Thus, it is not clear when (or if) any Defendant employee will have access to the "approved" COMIRNATY vaccine, leaving all Defendant employees who may elect to receive the "Pfizer" vaccine pursuant to Defendant's mandatory vaccine policy to receive a dose of the current stock of Pfizer- BioNTech vaccine still being administered subject to EUA rules.

---

[20]    ELA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA (Aug. 23, 2021), https://www.fda.gov/media/151710/download.

[21]    EUA Extension Letter for Pfizer-BioNTech COVID-19 Vaccine (Aug. 23, 2021), https://www.fda.gov/media/l50:386/download.

[22]    *Id.* at 3 n.10 (emphasis added).

[23]    ELA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA, *supra* note 4 at 2.

181.    On August 23, 2021, the United States Food and Drug Administration issued two separate letters pertaining to two separate Covid-19 vaccines. BioNTech Letter, United States Food and Drug Administration to BioNTech Manufacturing GmbH (Aug. 23, 2021), Pfizer Letter, United States Food and D'rug Administration to Pfizer, Inc. (Aug. 23, 2021).)

182.    In the Pfizer Letter, the FDA confirms that, on December 11, 2020, it granted Emergency Use Authorization for the previous Pfizer-BioNTech Covid-19 Vaccine. (Ex. 12, Pfizer Letter at 1.) It also notes that the EUA approval was continued on December 23, 2020, February 25, 2020, May 10, 2021, June 25, 2021, and August 12, 2021. (Pfizer Letter at 1-2.)

183.    The Pfizer Letter also makes clear that there is a scientific, manufacturing, and legally significant difference between the Pfizer- BioNTech COVID-19 Vaccine and the newly approved Comirnaty Vaccine. (Pfizer Letter at 2 n.9.)

184.    Specifically, the FDA stated that although the COMIRNATY COVID-19 Vaccine was granted full approval by the FDA, the Pfizer-BioNTech COVID-19 Vaccine was still only subject to the EUA authorization. (Pfizer Letter at 2 n.9 ("In the August 23, 2021 revision, FDA clarified that, subsequent to the FDA approval of COMIRNATY (COVID19 Vaccine, mRNA) for the prevention of COVID-19 for individuals 16 years of age and older, this EUA would remain in place for the Pfizer-BioNTech COVID-19  vaccine   for   the   previously-authorized indication and uses. It  also authorized COMIRNATY (COVID-19 Vaccine, mRNA)under this

EUA for certain uses that are not included in the approved biologics license application (BLA)." (Emphasis added.)

185.    Put simply, because all three of the currently available Covid -19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute prohibits Defendant (or any other entity) from making the Covid -19 vaccines mandatory.

186.    All existing vials of the FDA-approved Pfizer-BioNTech Covid -19 vaccine remain under the sole authorization of the EUA. (Pfizer Letter at 2 n.9.)

187.    On information and belief, the existing vials of the EDA-approved Pfizer-BioNTech Covid -19 vaccine register in the millions, and anyone receiving any Covid -19 vaccine for the foreseeable future is guaranteed to receive the EUA-approved Pfizer-BioNTech Covid -19 Vaccine, not the fully approved COMIRNATY.

188.    There are no currently existing doses of COMIRNATY in the United States and it is not being manufactured for production or distribution in the United States at this time.

189.    In fact, the FDA Pfizer Letter plainly indicates that COMIRNATY is not available in the United States: "Although COMIRNATY (COVID-19 Vaccine, mRNA) is approved to prevent COVID-19 in individuals 16 years of age and older, there is no sufficient approved vaccine for distribution to the population." (Pfizer Letter at 6 n.12 (emphasis added).) Thus, the FDA has admitted and acknowledged that the current supply of the fully approved COMIRNATY is not even available for the population in the United States, and thus issued the continued EDA authorization for the Pfizer- BioNTech Covid-19 Vaccine.

(Jd.).

190.    Indeed, in order for the FDA to have even continued the EUA for the Pfizer-BioNTech Covid-19 Vaccine, **it was required to find that there were no alternatives available for the Pfizer-BioNTech vaccine.** (See Pfizer Letter at 6 ("There is no adequate, approved, and **available alternative** to the Pfizer-BioNTech Covid -19 Vaccine to prevent Covid -19." (Emphasis added).)

191.    Thus, the only currently available Covid -19 vaccines are subject solely to EUA approval and therefore cannot be mandated by Defendant.

192.    In addition, consistent with the requirement in the Emergency Use Authorization statute that all potential recipients of the Covid -19 vaccine be informed of the option to accept or refuse the vaccine, the Emergency Use Authorization Fact Sheet for all three of the currently available Covid -19 vaccines specifically states - **as required by the Emergency Use Authorization statute**- that individuals have the right to refuse administration of the Covid -19 vaccine. Specifically, the Emergency Use Authorization Fact Sheets for all three Covid -19 vaccines state that it is the individual's right to refuse administration of the vaccine.

193.    By imposing its Mandatory Covid-19 Vaccination Policy on Plaintiffs and refusing to grant Plaintiffs their requested religious and/or exemption from such mandatory vaccination, Defendant denied Plaintiffs their right to accept or refuse administration of the three currently available Covid -19 vaccines, which are subject only to Emergency Use approval under the Emergency Use Authorization statute.

194.    Defendant, by denying Plaintiffs the right to accept or refuse administration of the three currently available Covid -19 vaccines, violated the

provisions of the Emergency Use Authorization statute.

195.    Defendant, by denying Plaintiffs their requested religious exemption and reasonable accommodation, denied Plaintiffs' their statutory rights under the United States Code and infringed upon the explicit protections outlined in the Emergency Use Authorization statute.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class and Subclasses, respectfully pray that the Court:

A.      Certify this action as a class action under Federal Rules of Civil Procedure 23(a) and (b), on behalf of the proposed Plaintiff Class and Subclasses, designate the proposed Class Representatives as representatives of this Class and Subclasses, and designate Plaintiffs' counsel of record as Class Counsel;

B.      Issue a Permanent Injunction upon Judgment, restraining and enjoining Defendant, all its officers, agents, employees and attorneys and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce or otherwise requiring compliance with the Mandatory Covid-19 Vaccination Policy or any other written or unwritten policy or practice denying Plaintiffs their right to accept or refuse administration of the Covid-19 vaccines under the Emergency Use Authorization statute or subjecting Plaintiffs to discrimination for the exercise of their sincerely held religious beliefs against administration of the Covid 19 vaccine in violation of Title VII and/or the ADA;

C.      Render a Declaratory Judgment declaring that Defendants Mandatory Covid-

48

19 Vaccination Policy, both on its face and as applied by Defendant is illegal and unlawful under the Emergency Use Authorization statue, 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III), and Title VII, 42 U.S.C. §2000e, et seq. and further declaring that:

        i.     by terminating Plaintiffs from employment with Defendant or by threatening to so terminate or remove Plaintiffs from their current positions, Defendant has unlawfully denied Plaintiffs their statutory rights under the Emergency Use Authorization statue to refuse administration of a product granted only Emergency Use Authorization; and

        ii.  by terminating Plaintiffs from employment with Defendant or by threatening to so terminate or remove Plaintiffs from their current positions, Defendant has unlawfully discriminated against Plaintiffs on account of their sincerely held religious and/or medical objections to receiving or accepting one of the three Covid-19 vaccines in violation of Title VII and the ADA.

      D.     Award Plaintiffs back pay, front pay (for terminated Plaintiffs not reinstated), and other compensatory damages suffered by Plaintiffs and Members of the Classes, including future pecuniary losses, emotional pain, suffering inconvenience, mental anguish, loss of enjoyment of life, and non pecuniary losses;

      E.     Award punitive damages to Plaintiffs and Members of the Class and Subclasses;

      F.     Adjudge, decree and declare the rights and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment;

G.      Retain jurisdiction over the matter for the purposes of enforcing the Court's order;

H.      Award Plaintiffs the reasonable costs and expenses of this action including reasonable attorney's fees as required by Title VII;

I.       Grant such other and further relief as the Court deems equitable and just under the circumstances; and,

J.       Award such other and further relief as it deems equitable and just.


Respectfully submitted,

The Welsh Law Group, LLC

James L. Welsh, III
PA I.D. #58790
Counsel for Plaintiffs


**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions
of the *Case Records Public Access Policy of the
Unified Judicial System of Pennsylvania* that require
filing confidential information and documents
differently than non-confidential information
and documents.

Submitted by:  Plaintiffs

James L. Welsh, III, Esquire
Attorney I.D.  #58790

50