IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE(S) AND JANE DOE(S), *Plaintiff*, v. PITTSBURGH REGIONAL TRANSIT, *Defendant*. | Civil Action No. 2:22-cv-01736 Hon. William S. Stickman IV |

### MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs filed an Amended Class Action Complaint ("Amended Complaint") against Defendant Pittsburgh Regional Transit ("PRT") on behalf of themselves and all others similarly situated, alleging that the implementation of PRT's Covid-19 Mandatory Vaccination Policy violated state and federal law. (ECF No. 14). Plaintiffs bring three claims under Title VII, 42 U.S.C. § 2000e, *et seq.*, one for religious discrimination and failure to accommodate (Count I), one for disparate treatment (Count III), and one for wrongful termination (Count IV). Plaintiffs also bring a claim for disability discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, *et seq.* (Count II) and a Pennsylvania common law claim for fraud (Count V). Four motions are presently before the Court: PRT's Motion to Strike and to Partially Dismiss the Amended Complaint (ECF No. 15); Plaintiffs' Motion to Proceed Using Pseudonyms/Motion for Protective Order (ECF No. 17); Plaintiffs' Motion for Oral Argument (ECF No. 23); and Plaintiffs' Motion to Allow Discovery Pending Partial 12(b)(6) (ECF No. 24). For the reasons set forth below, PRT's Motion to Strike and to Partially Dismiss the Amended

1

Complaint (ECF No. 15) will be granted in part and denied in part; Plaintiffs' Motion to Proceed Using Pseudonyms/Motion for Protective Order (ECF No. 17) will be denied; and Plaintiffs' Motion for Oral Argument (ECF No. 23) and Plaintiffs' Motion to Allow Discovery Pending Partial 12(b)(6) (ECF No. 24) will both be denied as moot.

I.     FACTUAL AND PROCEDURAL BACKGROUND

PRT is a Pennsylvania public authority responsible for providing public transportation in Allegheny County. "Plaintiffs are employees or former employees of [PRT]" who worked as bus drivers or maintenance workers. (ECF No. 14, ¶ 16). In January of 2022, PRT informed employees that it would institute a Covid-19 Mandatory Vaccination Policy ("Policy"), "requiring all of its active employees to be and provide proof of being fully vaccinated (as defined herein) by no later than midnight on March 15, 2022." (ECF No. 15-1, p. 3). Prior to instituting its mandatory vaccination policy, PRT adopted a policy that strongly encouraged, but did not require employees to be fully vaccinated and had implemented safeguards such as masking, social distancing, sanitizing, spit shields, increased ventilation on buses, and rules for seating, entering, and exiting buses. (*Id.*); (ECF No. 14, ¶ 42). The Policy warned that "[f]ailure to comply with this vaccination mandate could result in disciplinary action up to and including termination[]" and that the United States Food and Drug Administration ("FDA") had issued Emergency Use Authorizations ("EUA") for the Pfizer, Moderna, and Johnson and Johnson Covid-19 vaccines. (*Id.*). The Policy also stated that "[o]n August 23, 2021, the FDA provided full product approval for the Pfizer-BioNTech COVID-19 Vaccine[]" and that "[i]t is anticipated that the FDA will provide full product approval for the Moderna COVID-19 Vaccine and the Johnson and Johnson Vaccine at some point in the future." (*Id.*).

On February 1, 2022, the day the policy took effect, PRT emailed a General Notice of the Policy to all its employees. (*Id.* at 9-13). PRT also mailed a copy of the Policy and a notice letter from PRT's Chief Executive Officer ("CEO"), Katharine Kelleman ("Kelleman"), to each employee. (*Id.* at 1-2). In her letter, Kelleman stated that "getting vaccinated will help stem the further spread of COVID-19, and as new variants continue to emerge and cause further 'breakthrough' cases, help significantly reduce one's risk of serious illness, hospitalization or death if they contract COVID-19." (*Id.* at 14). The Policy has remained in place from February 1, 2022 to the present. (ECF No. 14, ¶ 34).

The Policy included the assurance that PRT "will consider medical and religious exemption requests as required by applicable law[,]" and provided a link for employees to complete and submit the relevant exemption request forms. (ECF No. 15-1, pp. 3, 4). According to the Amended Complaint, the exemption forms provided by PRT "contained no 'criteria,' 'evidence-based' or otherwise, to guide employees as to what information or 'evidence' [PRT] was seeking." (ECF No. 14, ¶ 111). PRT established an exemption committee to review religious and medical exemption requests. (*Id.* ¶¶ 19-21). The exemption committee was made up of PRT employees Inez Colon ("Colon"), Eric Wells, Judy Kalnas, Donald Rivetti, and Michael Heidecamp. (*Id.* ¶¶ 20-21). According to Plaintiffs, hundreds of PRT employees submitted religious or medical exemption requests and "[h]undreds of other Plaintiffs got the vaccination against their will because they were not informed by [PRT] that they had the absolute right to accept or reject the vaccination after being told of the risks and benefits." (*Id.* ¶¶ 22, 23). Plaintiffs were among those PRT employees who submitted religious or medical exemption requests in compliance "with all of the requirements [PRT] established for seeking a religious exemption and/or medical exemption from the Covid-19 vaccination policy." (*Id.* ¶ 50).

3

According to the Amended Complaint, PRT "denied all or virtually all exemption requests it received, regardless of merit." (*Id.* ¶ 24). Plaintiffs claim that PRT issued blanket denials on a "form denial letter," each of which "was dated either February 22, 2022 or February 25, 2022" and was signed by Colon. (*Id.*). Plaintiffs allege that PRT gave the same justification for all of its denials of religious and medical exemption requests; that "adequate protections for your safety and the safety of others cannot be provided reasonably and without undue hardship." (*Id.* ¶¶ 24-25, 30). Aside from these denial letters, Plaintiffs claim that PRT "never once engaged in the interactive process with any person to discuss reasonable accommodations." (*Id.* ¶ 24). In denying Plaintiffs' requests for religious exemptions, PRT did not challenge the sincerity of Plaintiffs' religious beliefs. (*Id.* ¶ 61). For the exemptions that PRT did grant, it did not "state whether the exemption was granted as a religious exemption or a medical exemption." (*Id.* ¶ 27).

Plaintiffs allege that PRT predetermined which employees' exemption requests would be granted based on their job title and importance to PRT's continued operations, "regardless of whether they even submitted an exemption request and regardless of the merit of their exemption." (*Id.* ¶ 39). According to the Amended Complaint, PRT "never intended to grant any of [Plaintiffs'] exemption requests to begin with, and [PRT's] entire exemption process was a sham." (*Id.* ¶ 113). Based on this claim, Plaintiffs initiated this lawsuit against PRT on behalf of themselves and others similarly situated.

Plaintiffs claim "that approximately 700+ employees may fall into the class of Plaintiffs wronged by [PRT's] discriminatory policies." (*Id.* ¶ 126). Plaintiffs' proposed Class consists of:

> All current and former [PRT] employees who sought a religious and/or medical exemption and accommodation to [PRT's] Covid-19 vaccination policy and were denied. In addition, Plaintiffs seek to represent all Plaintiffs who got the vaccination because they believed they had no choice under Federal law to accept or reject the vaccination without consequence.

4

(*Id.* ¶ 117). Plaintiffs divide this class into three subclasses: (1) the Terminated Class; (2) the Coerced Class; and (3) the Lack of Informed Consent Class. (*Id.* ¶ 118).

The Terminated Class includes PRT "employees who requested but were denied religious and/or medical accommodation to [PRT's] Covid-19 vaccination policy, and were terminated for their non-compliance with [PRT's] Covid-19 vaccination policy[.]" (*Id.*). The Terminated Class includes John Doe 1 and John Doe 2, who "brought this action using the pseudonymous Plaintiff designation to protect their privacy interest in bodily autonomy, and the concealment of health information." (*Id.* ¶ 7). John Doe 1 worked as a shifter for PRT for twenty years. (*Id.* ¶ 59). When PRT instituted its mandatory vaccination policy, John Doe 1 submitted a religious exemption request, which PRT denied. (*Id.*). John Doe 1 was ultimately fired for refusing to get the vaccine. (*Id.*). John Doe 2 worked for PRT as a bus operator and suffered from "severe anaphylaxis." (*Id.* ¶ 60). Because of this, John Doe 2's doctor advised against him getting the Covid-19 vaccine. (*Id.*). On the advice of his doctor, John Doe 2 submitted a medical exemption request, which PRT denied. (*Id.*). After his exemption request was denied, John Doe 2 attempted to get the vaccine at a Rite-Aid, but, when informed of his anaphylaxis, Rite-Aid refused to give him the vaccine. (*Id.*). John Doe 2 then asked if PRT, or the doctor used by PRT to review medical exemption requests, would administer the vaccine to him. (*Id.*). PRT refused and John Doe 2 was terminated for not getting the vaccine. (*Id.*).

The second subclass—the Coerced Class—includes "[c]urrent or former [PRT] employees who were threatened with termination because of their Covid-19 vaccination status but ultimately complied with [PRT's] vaccination policy under coercion and duress in conflict with their sincerely held religious beliefs and/or medical exemptions[.]" (*Id.* ¶ 118). The final subclass—the Lack of Informed Consent Class—includes "[c]urrent or former [PRT] employees who got the

vaccination without informed consent because the available vaccination[s] were all under EUA status and could not be mandated without informed consent." (*Id.*).

## II.     LEGAL STANDARD

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If parties present matters outside the pleadings and the court does not exclude them, the motion must be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment if they are integral to the allegations in the complaint and are authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint"); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). PRT attached three documents to its motion to dismiss: its Covid-19 Mandatory Vaccination Policy, a General Notice communicating the Policy's issuance, and a notice letter sent to employees from PRT's CEO. (ECF No. 15-1). Because these documents' authenticity is not disputed and Plaintiffs' claims are based on the documents, the Court will consider them at the motion to dismiss stage. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]").

### III.   ANALYSIS

**A. PRT's Partial Motion to Dismiss the Amended Complaint**

1. <u>Count I: Title VII Religious Discrimination – Failure to Accommodate</u>

At Count I, Plaintiffs bring a religious discrimination claim under Title VII, alleging that PRT "failed to provide Plaintiffs with religious exemptions and reasonable accommodations,

thereby discriminating against Plaintiffs because of their religious beliefs and/or medical conditions." (ECF No. 15, ¶ 148). To establish a claim for religious discrimination or failure to accommodate under Title VII, an employee must show that "(1) he held a sincere religious belief that conflicted with a job requirement, (2) he informed his employer of the conflict, and (3) he was disciplined for failing to comply with the conflicting requirement." *Fallon*, 877 F.3d at 490. If the employee establishes these necessary elements, the employer must show that accommodations for the employee's religious belief could not have been made without the employer incurring an undue hardship—that is, without incurring "substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 143 S. Ct. 2279, 2297 (2023).

PRT does not dispute that Plaintiffs have sufficiently pled a religious discrimination claim "with respect to John Doe [1], as to whom it may be inferred that he holds a sincere religious belief that conflicted with the Covid-19 vaccine requirement, that he applied for an exemption on religious grounds, which was denied, and that he was discharged." (ECF No. 16, p. 10). PRT argues, however, that Count I must be dismissed as it relates to all Plaintiffs who requested exemptions based on an alleged medical condition or disability and did not seek an exemption on religious grounds. (*Id.*). The Court agrees. The Plaintiffs who did not request a religious exemption from PRT's Policy—including John Doe 2 and those who requested medical exemptions—have not sufficiently established that they had religious objections to being vaccinated or that they informed PRT of those objections.

PRT also argues that Count I should be dismissed as it relates to the Plaintiffs who ultimately complied with PRT's vaccine requirement because they suffered no adverse employment consequence as a result of PRT's alleged discrimination. (*Id.* at 11). Indeed, to establish a Title VII religious discrimination claim, the plaintiff must show that the employer's

8

religious discrimination led to an adverse employment action—that is, led to injuries "with respect to [their] compensation, terms, conditions, or privileges of employment," or that it deprived them "of employment opportunities or otherwise adversely affect[ed]" their status as employees. 42 U.S.C. §§ 2000e-2(a)(1), (2).

The vaccinated Plaintiffs argue that being forced to take an unwanted vaccine to avoid being fired constitutes an adverse employment action. (ECF No. 19, p. 10) ("Forcing an unwarranted, objectionable medical procedure on Plaintiffs as a condition of employment certainly constitutes an adverse employment consequence."). Put another way, Plaintiffs argue that PRT's refusal to make reasonable accommodations for employees who had religious objections to the vaccine constitutes an adverse employment action. (ECF No. 14, ¶ 148). According to the Amended Complaint, the Plaintiffs who received the vaccine suffered the mental anguish of being coerced into violating their religious beliefs and incurred an "increased risk for death, blood clots, heart attacks, strokes, myocarditis and other severe injuries or illnesses known and unknown that are now being attributed to the vaccine." (*Id.* ¶¶ 66, 153). While such injuries may exist, they are not related to Plaintiffs' "compensation, terms, conditions, or privileges of employment[.]" 42 U.S.C. § 2000e-2(a)(1). Thus, the vaccinated Plaintiffs have not established that they suffered an "adverse employment action."

Even if the vaccinated Plaintiffs could establish that they suffered an adverse employment action, they lack standing to sue based on injuries—physical or emotional—that stem from receiving the Covid-19 vaccine. To establish standing for a class action claim, at least one named plaintiff must show that: (1) he "suffered an injury in fact—an invasion of a legally protected interest which was (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) that there is "a causal connection between the injury and the conduct complained

of"; and (3) that the injury is likely to "be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Here, neither named Plaintiff—John Doe 1 or John Doe 2—received the Covid-19 vaccine. (ECF No. 14, ¶¶ 59, 60). Thus, neither named Plaintiff has standing to sue based on alleged "medical battery" or based on an "increased risk for death, blood clots, heart attacks, strokes, myocarditis and other severe injuries or illnesses known and unknown" resulting from the Covid-19 vaccine. (*Id.* ¶ 153). *See Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000) ("[A] plaintiff who lacks the personalized, redressable injury required for standing to assert claims on his own behalf would also lack standing to assert similar claims on behalf of a class.").

PRT's motion to partially dismiss Count I will be granted as it relates to any Plaintiff who did not submit a religious exemption request and any Plaintiff who received the Covid-19 vaccination. The remaining Plaintiffs—John Doe 1 and any other Plaintiff who submitted a religious exemption request, had that request denied, and was ultimately terminated—have sufficiently pled a claim for Title VII religious discrimination.

  2. Count II: ADA Disability Discrimination

At Count II, Plaintiffs bring a claim for disability discrimination under the ADA, alleging that PRT wrongfully denied Plaintiffs' medical exemption requests and ultimately terminated Plaintiffs because they had medical conditions preventing them from receiving the Covid-19 vaccine. To establish an ADA disability discrimination claim, a plaintiff must show "(1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). PRT does not dispute that Plaintiffs were "otherwise qualified for the job" or that the

terminated Plaintiffs suffered an adverse employment action as a result of being unvaccinated. Rather, PRT moves to dismiss Plaintiffs' ADA claim on the basis that "the Amended Complaint does not adequately allege that any Plaintiff has a disability." (ECF No. 16, p. 13). Plaintiffs argue that PRT's mandatory vaccination Policy rendered John Doe 2 and other employees who were medically unable to get the vaccine "disabled" under the ADA's definition. (ECF No. 19, p. 11) (PRT's "mandatory vaccination policy clearly makes an individual disabled by a medical condition that prevents him getting the vaccine.").

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities" of the allegedly disabled individual. 42 U.S.C. § 12102(1)(A). John Doe 2 and other PRT employees who had a medical condition preventing them from getting the vaccine (and were denied an exemption) were "substantially limited" from engaging in the "major life activity" of working once PRT's Policy was put in place. *See id.* § 12102 (2)(A) ("[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."). The issue, then, is whether the Amended Complaint contains sufficient factual allegations to establish that these limitations were caused by "a physical or mental impairment[.]" *Id.* § 12102(1)(A).

Under the ADA, an "impairment" is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine[.]" 29 C.F.R. § 1630.2(h)(1). Medical conditions that prevented Plaintiffs from receiving the Covid-19 vaccine fit within this definition of impairment. They are "physiological

11

disorder[s] or condition[s] . . . affecting one or more body systems," namely the immune system. *Id.* Aside from John Doe 2's anaphylaxis, the Amended Complaint does not contain information relating to any of the other Plaintiffs' specific medical conditions that prevented them from getting the Covid-19 vaccine but does state that Plaintiffs provided PRT with "medical documentation from their personal physicians who advised against the vaccination for fear of severe reactions and/or death." (ECF No. 14, ¶ 9). *See also* (ECF No. 14, ¶¶ 16, 68, 161). Plaintiffs will ultimately be required to provide details relating to their specific diagnoses and medical conditions; the substance of the documents submitted to PRT; and the medical basis for their physicians' advice against being vaccinated. At this stage, however, the allegations contained in the Amended Complaint—when accepted as true and viewed in the light most favorable to the Plaintiffs—support a reasonable inference that these Plaintiffs were not able to get the Covid-19 because of a "physical or mental impairment."

As it relates specifically to John Doe 2, PRT argues that his anaphylaxis—an allergy that prevented him from getting the vaccine—is not a disability under the ADA. A "permanent, chronic, and severe allergy" can be considered a disability under the ADA. *Slade v. Hershey Co.*, No. 1:09CV00541, 2011 WL 3159164, at *4 (M.D. Pa. July 26, 2011). PRT argues that the Amended Complaint contains no allegations relating to the permanence of John Doe 2's anaphylaxis or the frequency of his reactions and that "[t]here was no allegation of facts that would show it was other than transitory and minor." (ECF No. 16, p. 13). In the context of this case—where the concern was about a specific allergic reaction to a specific vaccine that was required by a specific date—permanence and frequency are less relevant than the severity of the possible reaction to the mandated vaccine. Plaintiffs allege that John Doe 2's anaphylaxis was "severe" and that his doctor warned that a reaction from the Covid-19 vaccine could kill him. (ECF No. 14,

¶ 60). Plaintiffs also claim that Rite-Aid refused to give John Doe 2 the Covid-19 vaccine when informed of his anaphylaxis and that PRT denied John Doe 2's request to have the doctor used by PRT to review medical exemption requests administer the vaccine. (*Id.*). These facts are sufficient to establish that John Doe 2's anaphylaxis was severe.

Cases deciding whether an allergy is a disability usually hinge on whether the allergic reaction is avoidable or whether the employee's allergy substantially limits him from engaging in a major life activity. *See Slade,* No. 1:09CV00541, 2011 WL 3159164, at *4 ("[C]ourts repeatedly find no disability where plaintiff suffers an avoidable allergic reaction."); *Gallagher v. Sunrise Assisted Living of Haverford*, 268 F. Supp. 2d 436, 441 (E.D. Pa. 2003) (holding that plaintiff's allergy was not a disability because "[t]here is no evidence that [p]laintiff's allergies substantially restricts her in any major life activity."). Here, however, PRT argues that John Doe 2's anaphylaxis "is not an impairment, but an allergic reaction." (ECF No. 16, p. 13). As with the other Plaintiffs' alleged medical conditions, because John Doe 2's anaphylaxis prevented him from getting the vaccine, it fits within the ADA's definition of "impairment." That is, it is a "physiological disorder or condition" affecting John Doe 2's immune system. 29 C.F.R. § 1630.2(h)(1). Thus, John Doe 2 has established that, in this context, his anaphylaxis is a disability under the ADA.

The ADA's definition of "disability" also includes an individual who is "regarded" as disabled by their employer. 42 U.S.C. § 12102(1)(C). Plaintiffs argue that PRT "perceived [] otherwise healthy Plaintiff[s] as disabled solely because of their unvaccinated status." (ECF No. 19, p. 10). Being unvaccinated—in itself—is not a "physiological disorder or condition, cosmetic disfiguration, or [an] anatomical loss" and nothing in the Amended Complaint indicates that PRT regarded it as such. 29 C.F.R. § 1630.2(h)(1). Plaintiffs have not sufficiently established that PRT regarded being unvaccinated as an "impairment."

PRT's motion to dismiss Count II of the Amended Complaint will be granted as it relates to Plaintiffs claiming to be "regarded as disabled" based only on their unvaccinated status. PRT's motion to dismiss Count II will be denied as it relates to John Doe 2 and all other Plaintiffs who had a medical condition preventing them from receiving the Covid-19 vaccine, had a medical exemption request denied, and were subsequently terminated by PRT.

3. Count III: Title VII Religious Discrimination – Disparate Treatment

At Count III, Plaintiffs bring a Title VII claim under the heading "Religious Discrimination – Disparate Treatment[.]" (ECF No. 14, p. 44). Plaintiffs first allege that PRT "maintain[ed] a discriminatory mandatory vaccination policy that provided no religious exemption mandated by federal law[.]" (*Id.* ¶ 172). In their brief in opposition to PRT's motion to dismiss, Plaintiffs clarified that they do not dispute that PRT had a policy for religious exemptions; "[w]hat Plaintiffs are alleging is that [PRT's] religious exemption process was a sham." (ECF No. 19, p. 12). More specifically, Plaintiffs claim that "[t]he decision to rid its workforce of the unvaccinated was the predetermined plan of [PRT], regardless of the merit of Plaintiffs' exemption[]" requests. (ECF No. 14, ¶ 36).

Plaintiffs allege that PRT "had a policy to only grant exemption requests to certain employees that were essential to [PRT's] continued operations, such as route foreman and/or dispatchers. Bus operators and maintenance workers suffered disparate treatment solely based upon their job classification." (*Id.* ¶ 38). According to Plaintiffs, "certain pre-determined employees were granted exemptions regardless of whether they even submitted an exemption request and regardless of the merit of their exemption." (*Id.* ¶ 39). As PRT correctly points out, however, Title VII does not prohibit employers from discriminating based on employees' job titles or importance to a company; it only prohibits discrimination based on "race, color, religion, sex,

or national origin." 42 U.S.C. § 2000e-2(a). As such, Plaintiffs cannot pursue a claim under Title VII based on the allegation that they were treated differently because of their job titles.

To establish their disparate treatment claim, Plaintiffs must show that they were "singled out and treated less favorably than others similarly situated on the basis of" their religious beliefs. *White v. Gallagher Bassett Servs.*, 257 F. Supp. 2d 804, 808 (E.D. Pa. 2003). PRT's Policy required all employees to be vaccinated and nothing in the Amended Complaint or PRT's Policy indicates that employees with certain religious beliefs were treated differently than other employees. Rather, as part of Count III, Plaintiffs claim that PRT "fail[ed] to reasonably accommodate Plaintiffs' sincere religious beliefs and objections to the Covid-19 vaccination;" and "discriminatorily pressure[ed] Plaintiffs to forego their religious beliefs and conscience[.]" (ECF No. 14, ¶ 172). These allegations are the basis for Plaintiffs' Count I claim for religious discrimination and failure to accommodate but do nothing to establish a claim for disparate treatment. As such, PRT's motion to dismiss Count III will be granted.

4. Count IV: Title VII Wrongful Termination

At Count IV, Plaintiffs bring a Title VII claim for wrongful termination, alleging that PRT "terminated the employment of Plaintiffs after Plaintiffs refused to violate their conscience and their religious beliefs or medical advice by subjecting themselves to [PRT's] vaccination mandate." (ECF No. 14, ¶ 189). Regarding Plaintiffs whose medical exemption requests were denied by PRT, Title VII does not prohibit an employer from firing an employee based on a disability. Title VII does, however, prohibit an employer from terminating an employee because of the employee's "race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a). The Plaintiffs who submitted religious exemption requests to PRT, had those requests denied, and were subsequently fired for being unvaccinated, may seek relief under Title VII. However, as PRT

points out, "Count I already addresses the failure to accommodate Plaintiffs who objected to vaccination on religious grounds and were discharged." (ECF No. 16, p. 15). Count IV is duplicative of the claims at Count I that the Court is permitting to go forward. Given this, PRT's motion to dismiss Count IV will be granted.

     5.   <u>Count V: Fraudulent Inducement / Fraud</u>

At Count V, Plaintiffs bring a common law claim for fraud, alleging that PRT "misrepresented to Plaintiffs the status of the vaccines, that the vaccines were safe and effective, and that at least one of the vaccines had been fully approved by the FDA." (ECF No. 19, p. 14). According to the Amended Complaint, vaccinated Plaintiffs relied on PRT's representations and now face an "increased risk of serious injury and/or death[]" from the Covid-19 vaccine. (ECF No. 14, ¶¶ 222, 223). PRT argues that Count V must be dismissed because the named Plaintiffs do not have standing to bring a fraud claim.

"In the context of a class action, Article III [standing] must be satisfied by at least one named plaintiff[]" for each claim. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015) (internal quotations omitted). *See also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."). To establish that either of the named Plaintiffs—John Doe 1 or John Doe 2—have standing to pursue Plaintiffs' fraud claim, Plaintiffs must show: (1) that one of them "suffered an injury in fact—an invasion of a legally protected interest which was (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) that there is "a causal connection between the injury and the conduct complained of"; and (3) that the injury is likely to "be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61. Neither John Doe 1 nor John Doe 2 can be

said to have relied upon PRT's representations about the vaccine or to have suffered an injury as a result of getting the vaccine because neither John Doe 1 nor John Doe 2 received the Covid-19 vaccination. (ECF No. 14, ¶¶ 59, 60). In other words, neither John Doe 1 nor John Doe 2 can show a causal connection between their injuries and the conduct complained of in Count V. The claim pled relates to harm allegedly incurred by those who received the vaccine based on representations made by PRT about its safety, but the named Plaintiffs are not vaccinated. Thus, neither named Plaintiff has standing to sue on behalf of vaccinated Plaintiffs. PRT's motion to dismiss Count V will be granted.

### B. PRT's Motion to Strike and Plaintiffs' Motion to Proceed Using Pseudonyms

PRT filed a Motion to Strike the Amended Complaint (ECF No. 15) "for improperly failing to name or otherwise identify the [P]laintiffs in the caption or body of the Amended Complaint[.]" (ECF No. 15, pp. 1-2). Plaintiffs subsequently filed a Motion for Protective Order (ECF No. 17) "limiting the disclosure of Plaintiffs' identities to [PRT's] counsel and [PRT's] personnel who have a reasonable need to know Plaintiffs' identities for purposes of defending this action." (ECF No. 17, p. 4). Rule 10(a) states that "[t]he title of the complaint must name all the parties[.]" Fed. R. Civ. P. 10(a). "While not expressly permitted under [Rule] 10(a), in exceptional cases courts have allowed a party to proceed anonymously." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011).

To proceed anonymously, "a plaintiff must show both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." *Id.* (internal quotations omitted). Plaintiffs seek to litigate anonymously for fear of being subjected to "scorn, insults, religious bigotry, and resentment[.]" (ECF No. 17, p. 3). Plaintiffs also fear "ostracism, humiliation and retaliation from co-workers, supervisors and the public at large." (ECF No. 19, p. 7). Additionally, Plaintiffs claim that they have had death wished upon them and their families as a result of being unvaccinated and

legitimately fear the possibility of violence if not permitted to proceed anonymously. (ECF No. 17, p. 3).

"When a litigant sufficiently alleges that he or she has a reasonable fear of severe harm from litigating without a pseudonym, courts of appeals are in agreement that district courts should balance a plaintiff's interest and fear against the public's strong interest in an open litigation process." *Megless*, 654 F.3d at 408. In balancing these competing interests, the United States Court of Appeals for the Third Circuit has endorsed "a non-exhaustive list of factors to be weighed both in favor of anonymity and also factors that favor the traditional rule of openness." *Id.* at 409. The following six factors weigh in favor of anonymity:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Id.* (internal quotations omitted).

The first factor "does not support anonymity where the litigant's identity has never been confidential." *Doe v. Pennsylvania Dep't of Corr.*, 585 F. Supp. 3d 797, 803 (W.D. Pa. 2022). Plaintiffs claim that they "have taken steps to keep their identities confidential and out of the public eye[,]" but, by their own admission, Plaintiffs made "their identities known to [PRT] in order to seek a religious accommodation or medical exemption." (ECF No. 19, p. 6). The first factor, thus, weighs in favor of PRT.

The second factor asks the Court to evaluate "the bases upon which disclosure is feared or sought to be avoided, and the substantiality of th[o]se bases." *Doe v. Provident Life and Acc. Ins.*

*Co.*, 176 F.R.D. 464, 467 (E.D. Pa. 1997). Plaintiffs seek to avoid disclosing their identities to maintain privacy around their medical decisions and religious beliefs, and to avoid the possibility of "ostracism, humiliation and retaliation from co-workers, supervisors and the public at large." (ECF No. 19, p. 7). "That a plaintiff may suffer embarrassment or economic harm is not enough." *Megless*, 654 F.3d at 408. In the context of this case, Plaintiffs' desire to keep medical information private is also not a persuasive reason to remain anonymous. The Amended Complaint only identifies one specific medical condition of a named Plaintiff—John Doe 2's anaphylaxis (an allergic reaction). The Court agrees with PRT that "[a]n allergy, even involving a severe reaction, is not a reason to disregard Rule 10(a)." (ECF No. 16, p. 8). As far as Plaintiffs' concerns about the privacy of John Doe 1's religious beliefs, the Amended Complaint discloses that he opposes the Covid-19 vaccine for religious reasons and describes, in general terms, the religious bases for his objection. *See* (ECF No. 14, ¶¶ 76-107). The Court is not persuaded that the disclosure of these beliefs will lead to substantial prejudice or risk of severe harm to Plaintiffs.

There is no heightened public interest in Plaintiffs maintaining their anonymity, nor is there an atypically weak public interest in knowing Plaintiffs' identities. Thus, factors three and four weigh in favor of disclosure.

The final two factors have little bearing on the analysis. Plaintiffs give no indication that they would be unwilling to pursue the case at the price of being publicly identified, so the fifth factor weighs slightly in favor of disclosure. Because there is no reason to suspect that Plaintiffs are seeking to proceed anonymously for illegitimate ulterior motives, the sixth factor is neutral.

With the balance of factors weighing in favor of disclosure, the Court holds that the public's interest in an open litigation process outweighs Plaintiffs' fear of being publicly identified. PRT's motion to strike (ECF No. 15) will be granted and Plaintiffs' motion for a protective order (ECF

No. 17) will be denied. Plaintiffs shall file a Second Amended Complaint within fourteen days identifying the named Plaintiffs.

### IV. Conclusion

For the reasons set forth above, PRT's Motion to Partially Dismiss the Amended Complaint (ECF No. 15) will be granted in part and denied in part. PRT's motion to partially dismiss Plaintiffs' claim for religious discrimination (Count I) will be granted as it relates to any Plaintiff who did not submit a religious exemption request and any Plaintiff who received the Covid-19 vaccination. PRT's motion to dismiss Plaintiffs' claim for disability discrimination (Count II) will be granted as it relates to Plaintiffs who claim to be "regarded as disabled" based only on their unvaccinated status and will be denied as it relates to John Doe 2 and all other Plaintiffs who had a medical condition preventing them from receiving the Covid-19 vaccine, had a medical exemption request denied by PRT, and were subsequently terminated by PRT. PRT's motion to dismiss will be granted as it relates to Plaintiffs' claims for disparate treatment (Count III), wrongful termination (Count IV), and fraud (Count V).

PRT's Motion to Strike (ECF No. 15) will be granted and Plaintiffs' Motion to Proceed Using Pseudonyms/Motion for Protective Order (ECF No. 17) will be denied. Plaintiffs' Motion for Oral Argument (ECF No. 23) and Plaintiffs' Motion to Allow Discovery Pending Partial 12(b)(6) (ECF No. 24) will both be denied as moot. An Order of Court will follow.

BY THE COURT:

*/s/ William S. Stickman IV*

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

July 31, 2023
Dated