IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JACOB MEINERT as Class
Representative individually and on
behalf of those Plaintiffs who submitted
a religious exemption and were fired
NICHOLAS SCHALLUS, as Class
Representative individually and on
behalf of those Plaintiffs who submitted
a medical exemption and were fired,

No. 2:22-CV-01736

                     Plaintiffs,

vs.

Port Authority of Allegheny County d/b/a
Pittsburgh Regional Transit (PAT)

                     Defendant

## PLAINTIFFS' MEMORANDUM IN SUPPORT

## OF MOTION FOR CLASS CERTIFICATION

## **TABLE OF AUTHORITIES**

Cases                                                                    Page(s)

Moussazadeh v. Tex. Dep't of Criminal Justice, 703 F.3d 781, 790
(5th Cir. 2012)……………………………………………………………..   6

Davis v. Fort Bend County, 765 F.3d 480, 485, 486, 487 (5th Cir. 2014)……………….   6

Tagore v. United States, 735 F3d 324, 328 (5th Cir 2013)………………………………   6

Adeyeye v. Heartland Sweeteners LLC, 721 F3d 444,452 (7th Cir.2013)………………   6

Groff v. DeJoy, 600 U.S. 447, 468 (2023)……………………………………………   7

Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011)…………………………….   8, 9

General Tel. Co. of the New, Inc. v. EEOC, 446 U.S. 318, 330 (1980)………………....   8, 9

Marcus v. BMW of North America, LLC 681 F.3d (583 (2012)……………………….....   9, 17

In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305 (3rd Cir. 2009)…………….   9, 17

Chiang v. Veneman 385 F.3d 256, 265 (3d Cir.2004)……………………………..…..   9

In re Schering-Plough Corporation Erisa Litigation. 589 F.3d 585, 597
(3d Cir. 2009)……………………………………………………………….…...   9, 12

Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)…………………………………..   11

General Telephone Co of the Southwest v. Falcon, 457 U.S. 147, 160, 102
S. Ct. 2364, 72 L.Ed 740 (1982)……………………………………………………   12

Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 923 (3rd Cir. 1992)……..…..   12

Amchem Products, Inc. vs. Windsor, 521 U.S. 591, 625 (1977)………………………....   14, 16

In re DVI, Inc. Securities Litigation, 639 F.3d 623, 630 (3d Cir. 2011)………………..   16

Torres v. Mercer Canyons, Inc. 835 F.3d 1125, 1138 (9th Cir. 2016)……………..……..   17

Kamm v. California City Dev. Co., 509 F.2d 205, 211 (9th Cir. 1975).  ……………..   18

Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239 (3rd Cir. 1975)………………..……..   18

Statutes                                                                                Page(s)

Fed.R.Civ.P. 23……………………………………………………………    8, 9

Fed.R.Civ.P. 23(a)……………………………………………………    8

Fed.R.Civ.P. 23(a)(2)………………………………………………    9

Fed.R.Civ.P. 23(a)(3)………………………………………………    11

Fed.R.Civ.P. 23(a)(4)………………………………………………    14

Fed.R.Civ.P. 23(b)……………………………………………………    8, 17

Fed.R.Civ.P. 23(b)(3)………………………………………………    16, 18

Fed.R.Civ.P. 23(g)……………………………………………………    16

Fed.R.Civ.P. 23(g)(1)………………………………………………    15

Fed.R.Civ.P.23(g)(1)(A)……………………………………………    15

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF MOTION FOR CLASS CERTIFICATION**

### I.    Introduction

In this case, 94 employees lost their careers, lives, job security and retirement security for exercising their religious beliefs or following the advice of their physician to not receive the Covid-19 vaccine mandated by Defendant.[1]  Defendant received approximately $600,000,000.00 in Covid relief funds for various federal, state and local governments but has yet to pay any money to any of the 94 employees wrongfully terminated by Defendant's mandate. In ultimately firing almost 100 employees, Defendant has admitted that it believed or presumed that each Plaintiff who submitted a religious exemption had a sincerely held religious belief that conflicted with Defendant's Covid-19 vaccine requirement.[2]  This admission or presumption allowed Defendant to take the easy path to forcing the vaccine on as many employees as possible to reach their stated goal of 98% vaccination rate.[3]  For those who submitted medical exemptions, Defendant did not look at doctors' recommendations or opinions that the vaccine may cause serious harm or death, but rather, did the employee's medical condition qualify as a contraindication under CDC guidelines. If not, presumably any doctor's opinion that did not state a contraindication was disregarded and the exemption was denied, despite potential complications.[4]

---

[1] 94 employees comes from Defendant's interpretation of Judge Stickman's ruling on Defendant's 12(b)(6) motion that any plaintiff who submitted a religious and/or medical exemption and was terminated or suffered an adverse employment. Plaintiffs' counsel has fee agreements with 70 of the 94 Plaintiffs.

[2] Plaintiffs' Partial Motion for Summary Judgment, EFC49 will be discussed in greater detail throughout their Motion.

[3] This 98% vaccination rate goal was discussed by Defendant's Chief Legal Officer, Michael Cetra, Esquire in his sworn testimony, discussed in greater detail throughout this Motion.

[4] Defendant's use of the contraindication standard as a unilateral determination of disability will be discussed throughout this Motion.

Plaintiffs stated in their complaint and continue to aver that Defendant concocted a sham exemption process that was created by Defendant's Chief Legal Officer, counsel defending this class action and others to force its goal of 98% vaccination of its workforce while pretending to comply with the dictates of Title VII and/or the ADA. This exemption procedure was created by Defendant and its legal team. Defendant should not now be heard to complain that their plan produced unfair results for Defendant. Defendant's sole reason for denying any religious exemption was undue hardship. (See Defendant's Response to Plaintiffs' Request for Admissions No. 19 attached hereto as Exhibit 1.) Any medical exemption that was denied was done because the medical exemption submitted was not contraindicated by the CDC. Plaintiffs' averment that Defendant's exemption process was nothing but a "sham" is bolstered by Defendant's position that Plaintiffs' religious beliefs against the vaccine were only temporarily believed and Defendant now seeks to challenge each Plaintiff's sincerely held religious belief as a reason why Plaintiffs' class cannot be certified. With respect to medical exemptions, Defendant constantly told Plaintiffs to consult their own medical doctors regarding whether to take the Covid-19 vaccine, but then disregarded their doctor's opinions presumably because medical conditions did not contraindicate the CDC recommendations. (See Defendant's Responses to Second Request for Admissions and Third Request for Production of Documents, Answer to Request for Admissions No. 6, attached hereto as Exhibit 2).

Plaintiffs also believe Defendant utterly failed to engage in the interactive process to discuss reasonable accommodations with any Plaintiff.[5] The only real issue to be resolved is whether Defendant had an undue hardship in denying Plaintiffs' requests for religious exemptions under Title VII and whether Defendant's reliance on CDC contraindications could

---

[5] Instead of engaging in the interactive process, Defendant held disciplinary hearings as required by its union contract. This hearing was nothing more than Plaintiff's final opportunity to be told "get the vaccine or you're fired." (See Plaintiffs' Declarations attached hereto as Exhibit "3").

proceed under an ADA claim. The CDC does not give medical treatment or advise and advises people to consult their own doctors for such treatment or advice. (See Exhibit 2).

## II.    Plaintiffs' Proposed Class Definition.

Plaintiffs' Motion for Class Certification boils down to the following discreet issues:

1.  All Plaintiffs wrongfully terminated from their employment after Defendant assumed that Plaintiffs had sincerely held religious beliefs, removed reasonable accommodations and relied upon undue hardship in order to force Plaintiffs to either get vaccinated or be terminated.

2.  All Plaintiffs wrongfully terminated from their employment after Defendant encouraged Plaintiffs to consult their own physicians about receiving the Covid 19 vaccine then denied medical exemptions disregarding Plaintiffs' physician advice in favor of relying upon the CDC's contradiction as the sole basis to grant or deny exemptions.

3.  Whether Defendant's exemption process was a sham attempt to comply with anti-discrimination laws where Defendants presumed beliefs to be valid and sincere, refused to engage in any meaningful interactive process, and denied as many exemptions as possible to achieve its desired goal of 98% vaccination regardless of Plaintiffs' religious rights under Title VII or Plaintiffs' medical rights under the ADA.

## III.    Facts Relevant to Class Certification.

On March 15, 2022, Defendant instituted a vaccine mandate for their employees. Defendant indicated it would accept religious and medical exemptions as required by law. Defendant created an exemption review committee to review exemptions. Plaintiffs are former employees who were terminated after their religious exemptions were denied, after the religious beliefs were presumed to be valid and sincere but were denied solely on the basis of undue hardship. Plaintiffs are also former employees who were terminated after the medical exemptions were denied. Defendant disregarded Plaintiffs' doctors' opinions that did not allege a specific

3

contradiction to the Covid-19 vaccine as stated by the CDC, which, along with the FDA, do not

provide individual medical treatment, advice or diagnosis.( Defendant's Admissions attached

hereto as Exhibit 2.) The CDC website states that CDC and FDA do not provide individual

medical treatment, advice or diagnosis. If you need individual medical or health care advice,

consult a qualified healthcare provider.

Importantly, Defendant never challenged the sincerity or validity of any

Plaintiffs' requests for religious exemptions.  In fact, Defendant affirmatively stated throughout

the exemption process:

> "While we do not question the sincerity or validity of your
> religious beliefs…Port Authority is not able to
> accommodate your request…without undue hardship."[6]

Without reiterating verbatim the contents of Plaintiffs' Motion for Partial Summary

Judgment, it is worth highlighting that Defendant's Chief Legal Officer admitted Defendant

assumed the sincerity and validity of all Plaintiffs' exemptions, and multiple members of the

Exemption Committed admitted the validity and sincerity of Plaintiffs' religious beliefs. These

admissions by a party opponent during the relevant time period during and after the Defendant

was doing its exemption analysis, are most telling of how Defendant administered the exemption

process. Eric Wells, head of the Exemption Committee, said in one disciplinary hearing of Class

Representative Jacob Meinert, the Committee that reviewed all exemptions each request was

reviewed and believed to be sincere and valid. (See attached record of hearing for Jacob Meinert

---

[6] Plaintiffs' Motion for Partial Summary Judgment, ECF 49, focuses on the entirety of the process and how Defendant admitted that Plaintiffs' beliefs were not being challenged.  Defendant's chief legal officer, Michael Cetra, admitted in sworn testimony that Defendant was not challenging the sincerity or validity of religious beliefs but it was an undue hardship. (See Exhibits 5, 6, & 7, ECF 49, and also attached hereto as Exhibit 4. In addition, Defendant's Answer to Plaintiffs' Third Amended Complaint No. 28 states…. "Defendant did not challenge the sincerity or religiosity on any employee's religious exemption request" (Attached hereto as Exhibit 5 is Paragraph 28 of Defendant's Answer to Third Amended Complaint).

4

attached as Exhibit 6). The Motion for Partial Summary Judgment and accompanying exhibits are collectively attached hereto as Exhibit 4. In addition, Plaintiffs have attached collectively as Exhibit 3 the Declarations of Class Representatives, Jacob Meinert and Nicholas Schallus, and the substantial majority of Plaintiffs currently represented by Plaintiffs' counsel outlining that Defendant told Plaintiffs that their beliefs were sincere and valid and were never told that Defendant's beliefs were temporary and only admitted for the limited purpose of claiming hardship so Defendant could force Plaintiffs to choose between getting the vaccination or getting fired.

Plaintiffs believe that Defendant, through its statements and exhibits, have made an admission by a party opponent that Plaintiffs' beliefs against the Covid-19 vaccine were both sincere and valid. These admissions were made at or about the time of the exemption process, and were done to allow Defendant to deny Plaintiffs' exemptions on basis of undue hardship. At the very least, these statements and representations by Defendant's Chief Legal Officer and the Exemption Committee should allow enough proof to show that Plaintiffs met their prima facie burden under Title VII to switch the burden of proof to Defendant to show it either offered Plaintiffs reasonable accommodations or that to do so would create an undue hardship on Defendant.

Additional documents provided in discovery also show that Defendant reviewed the sincerity and religiosity of Plaintiffs' religious beliefs. Attached hereto are the Exemption Review Committee's criteria which clearly indicate that the Committee reviewed these criteria immediately upon reviewing an exemption for timeliness. (See Exhibit 7). In addition, Defendant produced the charts for all employees who submitted exemptions. This chart shows undoubtedly

that Defendant reviewed the content of Plaintiffs' religious exemptions and considered the sincerity and religiosity of Plaintiffs' religious beliefs.

If the Court looks at the EEOC guidance section 12: Religious Discrimination, it states that religious beliefs are to be presumed. Like the religious nature of a belief, observance or practice, the sincerity of an employee's stated religious belief is usually not in dispute and is "generally presumed or easily established." Moussazadeh v. Tex. Dep't of Criminal Justice, 703 F.3d 781, 790 (5th Cir. 2012). When it comes to religion, the EEOC and courts must exercise a "light touch" in making this determination. Davis v. Fort Bend County, 765 F.3d 480, 485, 486, 487 (5th Cir. 2014) (quoting Tagore v. United States, 735 F3d 324, 328 (5th Cir 2013); See also Adeyeye v. Heartland Sweeteners LLC, 721 F3d 444,452 (7th Cir.2013) (emphasizing that Title VII has a "broad and intentionally hands-off definition of religion").

What is painstakingly obvious is that Defendant lumped all religious exemptions together regardless of what Plaintiff put in his or her individual exemption and presumed that all Plaintiffs had religious beliefs against the vaccine that were both sincere and valid.

Even though Defendant admitted or presumed that all Plaintiffs' religious beliefs were sincere and valid, at no time did Defendant undertake an interactive process with any employee to discuss reasonable accommodations (See Declarations attached hereto as Exhibit 3). Defendant did not and could not discuss reasonable accommodations because all such accommodations suddenly disappeared on the date Defendant's mandate become effective. Now, the only issue discussed was whether the employee would get the vaccine. If not, the employee was fired. (See Exhibit 3, Paragraphs 8 and 9). Plaintiffs believe Defendant has conceded this point as no jury could conclude that Plaintiff's disciplinary hearing was an interactive process. (See steps to follow for non-compliance with PAAC's Covid-19 vaccination policy attached

6

hereto as Exhibit 8.)  After all, Defendant could not offer something it took away as a reasonable accommodation if Defendant's goal was 98% vaccination.

Given that Defendant admitted that Plaintiffs' beliefs were all valid and sincerely held, and that no interactive process took place, Defendant's only remaining defense is undue hardship. Under Groff v. DeJoy, 600 U.S. 447, 468 (2023), undue hardship now requires that when an employer denies a religious accommodation, it must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business. Defendant admits that it did not individualized analysis to determine undue hardship.( See Exhibit 3).  In these cases, there were no accommodations at issue. Defendant had removed all accommodations like masking, distancing, sanitizing, testing, etc. in an effort to force as many Plaintiffs as possible to get the vaccine. No individual interactive process was done to discuss reasonable accommodations. All Defendant did was group Plaintiffs into categories of transportation or maintenance. If a person had exposure to other employees or the public, the entire classification of Plaintiffs were denied. Except that certain employees were granted exemptions based upon their particular job title and importance to Defendant. These employees hand-picked for exemptions,  had the same or greater exposure to others than did the terminated employees.

For Plaintiffs with medical exemptions, all Plaintiffs were denied because their pre-existent conditions or disabilities did not show a contraindication to the CDC's guidelines. Defendant did not factor whether or not Plaintiffs' conditions were a recognized disability under the ADA.

As for damages, all Plaintiffs were terminated as the direct result of Defendant's vaccine mandate thereby all suffering the same harm. These damages are easily calculated by

Defendant's own payroll records. Plaintiffs' lost income, benefits, vacation and sick time as well as medical benefits and pension benefits. Attached hereto are Summaries prepared by Defendant to show Plaintiffs' true income factoring into all that was lost by their unlawful termination. (Exhibit 9, Defendant's Total Rewards calculation for 2 of the putative Plaintiffs). Although there is some degree of individuality regarding disparity of income based upon years of service and job title these are easily rectified by Defendant's own records and subsequent calculations ordered by the Court. Plaintiff has also consulted an economic expert who has concluded damages calculations are easily done using Defendant's own documents, including the total rewards.

### IV.    Argument.

#### A.    *The Court should certify the Putative classes.*

Under Rule 23 the party seeking class certification must meet the requirements of subsection (a). Per Rule 23(a) the Plaintiffs must demonstrate: (1) that the class is so numerous that the joinder of all members is impractical; (3) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and, (4) the representative parties will fairly and adequately protect the interests of the class. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011). Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b). Id. As discussed below, the proposed class clearly satisfies both inquiries.

#### B.    *The Class satisfies Rule 23(a) requirements.*

1. The Class is sufficiently numerous, and the joinder of all members is impracticable.

When evaluating this requirement, the Court considers the specific facts of the cases, and the rule itself "imposes no absolute limitations." General Tel. Co. of the New, Inc. v. EEOC,

446 U.S. 318, 330 (1980). However, a general rule of classes of forty (40) or members satisfies numerosity. <u>Marcus v. BMW of North America, LLC</u>, 681 F.3d (583 (2012.   Numerosity, like all Rule 23 requirements, must be proven by a preponderance of the evidence. See <u>In re Hydrogen Peroxide Antitrust Litigation</u>, 552 F.3d 305 (3rd Cir. 2009). In this case, the class comprises all of PRT's employees who requested an exemption from Defendant's mandatory Covid-19 vaccine requirement and were denied and terminated or suffered an adverse employment consequence. This comprises 94 people in total who were denied either by religious and/or medical exemption.[7]  Given that the number of class members is 94 former employees who requested and were ultimately denied a religious and/or medical accommodation and suffered an adverse employment consequence (either terminated or forced into early retirement) the numerosity requirement is satisfied, and the joinder would be impracticable.

### C.   The Putative Class satisfies Rule 23(a)(2) commonality requirements because there are common questions of law and fact.

Commonality is the rule requiring that a Plaintiff show there are questions of law or fact common to a class to which the answers are "apt to drive the resolution of the litigation." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. at 350. This requirement is usually met when Plaintiff can demonstrate that the class members have suffered the same injury. <u>Id</u>. Rule 23(a)(2). Commonality requirement "does not require identical claims for facts among class member[s]." <u>Chiang v. Veneman</u> 385 F.3d 256, 265 (3d Cir.2004), abrog. on other grounds by <u>Hydrogen Peroxide</u>, 552 F.3d at 318.  For purposes of Rule 23(a)(2) even a single common question will do "<u>Dukes</u>, 131 S. Ct. at 2556 (quotation marks and alterations omitted). See also <u>In re Schering-Plough Corporation Erisa Litigation</u>. 589 F.3d 585, 597 (3d Cir. 2009). Here, the class

---

[7] The number 94 is derived from Defendant's discovery responses as to the total number of people eligible to sue based upon Judge Stickman's ruling on Defendant's 12(b)(6) Motion to Partially Dismiss. Plaintiff's Class Action Complaint.

representatives and members of the putative classes were all subject to PRT vaccination mandate and were forced out of their jobs through termination or forced early retirement after their religious and/or medical exemptions were denied.

**Common Questions of Fact Include:**

1. Did Defendant admit or presume that Plaintiffs had religious beliefs that were sincere and valid.

2. Whether there was a standardized process of inquiring into the sincerity of the faith of any plaintiff who requested a religious exemption.

3. Whether there was a standardized process or review process for determining reasonable accommodation.

4. Whether there was a universal pattern of denying religious accommodations unless you were in a certain job classification.

5. Whether there was a universal pattern of denying religious accommodations based upon job classification.

6. Whether there was a universal denial of all medical exemptions regardless of disability or impairment unless there was a contraindication to the CDC.

7. Whether there was a universal pattern of removing all accommodations in order to force Plaintiffs to either receive the vaccination or be terminated.

8. Was the result of the universal denial the loss of employment at PRT.

**Common Questions of Laws include:**

1. Whether the denial of religious accommodation to the unvaccinated is lawful under federal and state anti-decimation laws

2.  Whether Defendant's exemption process is consistent with federal and state employment laws;

3.  Whether defendant admitted the sincerity and religiosity of plaintiff's religious beliefs;

4.  Whether PRT engaged in the interaction process as required by law.

5.  Whether PRT waived its ability to claim undue hardship as the result of failing to engage in the interactive process.

6.  Whether PRT had an undue hardship to justify religious exemptions

7.  Whether PRT's removal of all accommodations in order to claim undue hardship is violation of federal and state employment laws.

8.  Whether PRT had an undue hardship to deny Plaintiffs' religious exemptions

9.  Whether Defendant's universal policy of denying all medical exemptions that did not show s a contraindication is in violation of the ADA.

Indeed, answering these questions will resolve the central issues in this case for the entire class(es). In view of that, the proposed putative classes satisfy the commonality requirement for Rule 23.

### D. The Putative Classes satisfy Rule 23(a)(3) typicality requirement because the class representative's claims are typical.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The concepts of typicality and commonality are closely related and often tend to merge. See, Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994). "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be

fairly and adequately protected in their absence." General Telephone Co of the Southwest v. Falcon, 457 U.S. 147, 160, 102 S. Ct. 2364, 72 L.Ed 740 (1982). If a plaintiff's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class. Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 923 (3rd Cir. 1992). To determine whether a plaintiff is markedly different from the class as a whole, courts consider the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class. See Schering Plough, 589 F.3d at 597. This comparative analysis addresses three distinct, though related concerns: (1) the claims of the class representative must be generally the same as those of the class in both terms of (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interest and incentives of the representative must be sufficiently aligned with those of the class. Id. At 599.

Here, the class representatives' claims are typical of the Plaintiffs' classes in that (1) named Plaintiff had a religious belief and/or medical condition or reason that compelled them not to receive the Covid-19 vaccine; (2) in the case of religious beliefs, they are all told that PRT presumed their beliefs were sincere and valid; (3) in medical cases all Plaintiffs put forth disabilities that were not contraindicated by the CDC; (4) they all submitted written requests going through the identical mechanism for review (5) none were offered reasonable accommodation through the interactive process for their religious beliefs or medical condition; (6) their requests were denied; (7) there was no appeal process or interactive process; (8) once their exemption was denied, their only option was to get the vaccine or be terminated and (9)

they were terminated. In this case, Class Representation is typical of all members of the proposed class. Jacob Meinert was an employee of PRT who submitted a request for a religious exemption. He was told that PRT believed his beliefs were both sincere and valid, but his request was denied under undue hardship. He was not given the opportunity to engage in the interactive process to discuss reasonable accommodations. At his disciplinary hearing, his only choice was to get the vaccine or be terminated. Finally, he was terminated. This was the exact scenario for every Plaintiff in the proposed class.

Class representative, Nick Schallus, applied for a medical exemption from the vaccine mandate. His request for medical exemption was denied, not on the basis that he did not have a disability or had a medical condition, but that his condition did not qualify because it was not contraindicated by the CDC. He was not given the opportunity to discuss reasonable accommodations in the interactive process. At his disciplinary hearing, his only option was to get the vaccination against his doctor's advice or be fired. Finally, he was terminated. Also common to both those with religious and/or medical exemption requests, all reasonable accommodations provided by PRT were no longer available on the date the vaccine mandate went into place on March 15, 2022. These reasonable accommodations included masking, distancing and sanitizing and other precautions that Defendant promised would keep Plaintiffs safe from contracting or transmitting Covid. No Plaintiff was offered a reasonable accommodation. All Plaintiffs' religious exemptions were denied solely on the basis of undue hardship  for which PRT has admitted it undertook no individualized hardship analysis.

Further typicality includes all Plaintiffs offered to continue using the reasonable accommodations that were suddenly unreasonable when Defendant's vaccine mandate took effect and Plaintiffs would have agreed to the accommodations deemed reasonable when

Defendant did grant an accommodation (wearing a KN-95 or N-95 mask, distancing , remaining in same job and testing on one's own time and expense.

Here the salient facts that speak to typicality are the universal result that all Plaintiffs believed religious beliefs were denied on the basis of undue hardship after all reasonable accommodations were taken away. Their only option was to abandon their religious beliefs or be fired. They chose to follow their beliefs and were fired. For those with medical conditions and doctors' opinions, they were universally denied because their conditions did not show a contraindication to the vaccine by the CDC. They were denied the opportunity to discuss reasonable accommodations. Any reasonable accommodations were taken away from them. At their disciplinary hearing, their only option was vaccination or termination. They chose to believe their doctors and were terminated.

In summary, typicality is met by class representatives like all members of their classes they submitted an exemption which was denied for the exact same reasons and they were terminated.

### E. *The Class Representatives will fairly and adequately protect the Putative Classes' Interests.*

To satisfy Rule 23(a)(4), the representatives must not possess interests that are antagonistic to the interests of the classes and the representative's counsel must be qualified, experienced and generally able to conduct the proposed litigants. This adequacy requirement serves to undercover conflicts of interest between the named parties and the class they seek to represent. Amchem Products, Inc. vs. Windsor, 521 U.S. 591, 625 (1977). To assure this adequate representation, the class representative's claim must not be inconsistent with the claim of other members of the class.

The Plaintiff representative's interests here are entirely aligned with those of the proposed putative class members. As with each class member, Plaintiffs sought an exemption to Defendant's mandatory vaccine policy on either religious and/or medical reasons and each allege they violated their rights. They were denied reasonable accommodations and were terminated. The representatives have no known antagonistic claims with other class members. The 70 class members currently being represented by Plaintiffs' counsel have, for the past 2 years, participated in bi-monthly meetings, in person and/or by video, and have constantly expressed a desire to remain together as a group. Additionally, Plaintiffs' economic damages can be easily calculated using Defendant's own documents and a standardized mathematical formula according to Plaintiffs' proposed expert.

As for the qualifications of Plaintiffs' counsel, Rule 23(g) requires that the Court appoint class counsel that is certified under Fed.R.Civ.P. 23(g)(1). Class counsel must "fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(1). In determining whether this requirement is met, courts must consider: (1) "the work counsel has done in identifying or investigating potential claims in the action" (2) "counsel's experience in handling class actions, the complex litigation and the types of claims asserted in the action" (3) "counsel's knowledge of the applicable law" and (4) "the resources that counsel will commit to representing the class." Fed.R.Civ.P.23(g)(1)(A).

For two years, the undersigned counsel and his staff have satisfied these four requirements First, Plaintiffs' counsel has interviewed and communicated with class representatives and a vast majority of the entire class, holds bi-monthly meetings, both in person and by video, belongs to groups of lawyers throughout the country involved in vaccine mandate litigation, consulted on many occasions with counsel with multiple years of class action

experience on how best to manage this case, performed relevant legal research and drafting and investigated the facts and legal claims raised in this case for 2 years. Plaintiffs' counsel has spent thousands of hours in preparing this matter through the 2 years since the mandate came into effect and constantly keeps abreast of what is occurring in similar cases in Pennsylvania and throughout the Country. Plaintiffs' counsel has significant experience in large scale mass tort litigation having been National counsel for clients involved in mass tort litigation, either trying mass tort claims or directing litigation strategy throughout the country.

Lead Plaintiffs' counsel has a team of paralegals and staff who assist in coordinating this case and has handled many employment law claims to resolution. Finally, Plaintiffs' counsel is prepared to contribute significant resources to the representation of the class and has already consulted with both medical and economic experts in order to prepare for trial. Plaintiffs' counsel, therefore, satisfies Rule 23(g) and respectfully represents that this Court appoint him class counsel for the proposed class.

### F. The Classes meet Rule 23(b)(3) requirements

Rule 23(b)(3) states that plaintiff must demonstrate the superiority of maintaining a class action and show "that the questions of law or fact common to class members predominate over any questions affecting only individual members and whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3) Amchem Products, Inc. v. Windsor, 521 U.S. 591, 615 (1997). This predominance tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation. Id. To assess predominance, a court at the certification stage must examine each element of a legal claim through the prism" of Rule 23(b)(3). In re DVI, Inc. Securities Litigation, 639 F.3d 623, 630 (3d Cir. 2011). A plaintiff must "demonstrate that the element of the legal claim is

capable of proof at trial through evidence that is common to the class or individual to its members." Hydrogen Peroxide, 552 F.3d at 311. "Because of the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate same prediction as to how specific issues will play out in order to determine whether common or individual issues will predominate in a given case." Id.

### G. *Common issues of law and fact predominate the Putative Class*

In evaluating Rule 23(b)'s predominance requirement the court must ensure that the class is not defined so broadly as to include a great number of members who for some reason could not have been harmed by the Defendant's allegedly unlawful conduct Torres v. Mercer Canyons, Inc. 835 F.3d 1125, 1138 (9th Cir. 2016) See also, Marcus, 687 F.Supp 583, 600). In this case, Plaintiffs' claims center on how PRT developed and carried out its employer vaccine requirement and the result that process had on employees who sought exemptions. In the case of religious exemptions, Defendant presumed all Plaintiffs' religious beliefs were sincere and valid, took away all reasonable accommodations, failed to engage in the interactive process and claimed undue hardship. Then, left with abandoning their sincerely held religious beliefs or being terminated, Plaintiffs were fired. The sincerity or religiosity of Plaintiffs' beliefs were presumed. Under the law, the burden then shifts to Defendant to show that reasonable accommodations were not possible absent undue hardship. In medical exemption claims, all Plaintiffs were denied, regardless of disability or condition, unless said condition was contraindicated by the CDC. Each and every Plaintiff in either class was harmed by Defendant's policy. Indeed this question predominates other issues affecting individual class members and the central questions, in this case, are capable of resolution on a class-wide basis by looking at the vaccine policies and procedures. Defendant in this case simply presumed Plaintiffs' religious

beliefs were sincere and valid. This fact cannot be denied. Defendant removed all reasonable accommodations. Defendant conducted no individual interactive process. Defendant is then left with an undue hardship analysis which it admits it did not do on an individual basis. Accordingly, the predominance requirement is satisfied for both classes.

### H. *Class Action is superior to other available methods for fairly and efficiently adjudicating the controversy*.

The Superiority requirement of Rule 23(b)(3) refers to the preferability of adjudicating claims of multiple parties in one judicial proceeding and in one forum, rather than forcing each Plaintiff to proceed in a separate suit. Kamm v. California City Dev. Co., 509 F.2d 205, 211 (9th Cir. 1975). As a result, Rule 23(b)(3) relies on whether the class action would achieve "economies of time, effort, and expense and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239 (3rd Cir. 1975). Accordingly, the Court must assess the advantages of alternative procedures for handling the total controversy Id.

In this case, resolving almost 100 potential claims in a single action is far superior to individual lawsuits in terms of economies of time, effort, expense, and uniformity. Indeed, Defendant created an exemption process that lends itself easily to a class action. It was Defendant who chose to presume Plaintiffs' religious beliefs of all Plaintiffs as sincere and valid. It was Defendant who chose to take away from Plaintiffs all forms of reasonable accommodations. It was Defendant who failed to engage in the interactive process with Plaintiffs. It was Defendant who chose to terminate each and every Plaintiff solely on the basis of undue hardship. It was Defendant who failed to do any individualized assessment of undue hardship. Defendant created the playing field and now wants to complain about the result.

Plaintiffs did nothing more than obey their faith or abide by their doctors' opinion. 94 people were terminated through absolutely no fault of their own.

As the central focus of the issue is the same across all class members, it would be a wasted and extensive effort for the Court to work through each of these claims individually and unnecessarily. 94 complaints, 94 motions to dismiss, 94 motions for summary judgment, 94 mediations, 94 Rule 26 meetings, 94 discovery orders and motions, 94 juries and 94 trials. Years and years of litigation can simply be resolved by forcing the Defendant to lie in the bed it made to force as many people as possible to abide by its desire of 98% vaccination. Years and years of litigation for each Plaintiff who lost his or her job because they chose to believe their God or their doctor. This case screams for justice faster than that.

Focusing the litigation in this Court, and resolving it by certifying this class action will save this Federal District from spending precious, scarce resources of the judicial system, will avoid duplicative proceedings and inconsistent results on substantively similar issues and claims. Therefore, a class action is the superior method of adjudicating this case and the proposed classes should be certified under 23(b)(3)

### I. *Conclusion*

For the foregoing reasons, Plaintiffs respectfully request this Honorable Court grant Plaintiffs' Motion for Class Certification.

Respectfully submitted,

The Welsh Law Group, LLC

_____

James L. Welsh, III
PA I.D. #58790
Counsel for Plaintiffs

Dated: 4/22/24