IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB MEINERT as Class Representative individually and on behalf of those Plaintiffs who submitted a religious exemption and were fired NICHOLAS SCHALLUS, as Class Representative individually and on behalf of those Plaintiffs who submitted a medical exemption and were fired,<br><br>Plaintiffs,<br><br>vs.<br><br>Port Authority of Allegheny County d/b/a Pittsburgh Regional Transit (PAT)<br><br>Defendant | No. 2:22-CV-01736 |

## PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO CLASS CERTIFICATION

AND NOW, come the Plaintiffs, by and through their counsel, James L. Welsh, III, Esquire and The Welsh Law Group LLC and files the within Reply to Defendant's Opposition to Class Certification, the following of which is a statement:

Ninety-Four (94) hard working employees were told by Defendant that it would accept either religious or medical exemptions as required by law. Ninety-Four (94) employees gathered information from their religions and/or the doctors to seek an exemption from Defendant's vaccine mandate. Each and every plaintiff hoped and prayed Defendant would follow the law set out by Title VII and/or the ADA. People with legitimate sincerely held religious beliefs never dreamed that Defendant would pit one's religious beliefs against his or her career and ability to provide for their family. People with legitimate medical conditions never imagined that their doctor's opinion would be discarded because some hired gun doctor would disagree.

From the beginning, Plaintiffs referred to Defendant's scheme as a "sham" exemption process. Why? The exemption process designed and created by Defendant's Chief Legal Counsel and the very same lawyers defending this class action never intended to recognize sincerely held religious beliefs against the Covid 19 vaccine[1] or to recognize a doctor's opinion that the Covid 19 vaccine posed great risk of injury or death due to pre-existing conditions. What Defendants and their legal team created was an end-around run circumventing both the letter and the spirit of anti-discrimination statutes like Title VII and the ADA. Defendant now seeks to avoid class certification by submitting a twenty-four (24) page Affidavit by the architect of the sham exemption process.

Defendant, through its chief legal counsel and its defense counsel outlined in tremendous detail how big PRT is, what it does, the pandemic and this wonderful process it created and designed for the exemption process. However, this is where fantasy and reality collide. Plaintiff submitted over 50 declarations from Plaintiffs and the putative class of Plaintiffs that were exactly identical. Why? To illustrate to the Court that Defendant's exemption process wrapped and packaged neatly with a bright red bow on top, but was nothing more than a plan devised by Defendant to deny as many exemptions as possible to pit Plaintiffs' religious beliefs or doctors' opinions against their careers in order to force as many people to get the vaccine under the guise of health & safety.

Directing the Court away from fantasy and back to reality, Plaintiffs' declarations clearly and succinctly outline how the process was implemented.

---

[1] See Health Freedom Defense Fund, Inc., et al. v. Alberto Carvalho, et al. 2:21-cv-08688 (9th Cir Ct. of Appeals filed June 7, 2024) holding that Covid 19 vaccines are not traditional vaccines because it does not "prevent the spread" of Covid 19 distinguishing Jacobson v. Massachusetts, 197 U.S. 11 (1905). This holding eviscerates any claim by Defendant that the vaccine mandate was necessary to stop the contraction or transmission of Covid and was therefore, necessary to protect other employees and the public from getting or transmitting Covid 19.

1. Tell the employees you will grant exemptions as required by law.

2. Have employee submit exemption either religious and/or medical.

3. Pretend to spend time reviewing exemption. Ask no question or engage in the interactive process.

4. Only grant exemptions to a limited few, 2%, solely on job title and essential needs of employer (i.e. Route Foreman and/or Dispatchers).

5. Deny all others under the guise of undue hardship.

6. Never discuss reasonable accommodations.

7. Only pretend to believe that someone had a sincerely held belief only for the purpose of either getting the vaccine or getting fired and then say now we want to challenge your beliefs.

8. Fire 94 employees who chose to follow their faith or doctor's orders not to be vaccinated.

9. Nineteen (19) months later offer Plaintiffs their jobs and forever penalize them if they do not accept an offer which requires them to lie and expose them to liability.

That in a nutshell is the realistic, not the fictitious, application of Defendant's vaccine mandate and exemption process.

Why does Defendant cling to the fantasy that it explored reasonable accommodations throughout the interactive process? Plaintiff believes that the answer lies in those lucky few who got exemptions. If you were one of the pre-determined select 2%, your only requirements were that you continue to social distance and wear an N-95 or KN-95 mask. Their total accommodation costs, .15 cents. (See Exhibit "1").

Plaintiffs have filed a Motion for Partial Summary Judgment asking this Court to rule that Defendant admitted that Plaintiffs had sincerely held religious beliefs or at least presumed their beliefs were sincerely held and this prima facie case is sufficient to shift the burden of proof to Defendant under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), to prove that it actually engaged in the interactive process to discuss reasonable accommodations unless it was an undue hardship under <u>Groff v. DeJoy</u>, 143 S. Ct. 2279 (2023).

Plaintiffs ask this Court to recognize that these Plaintiffs did nothing wrong. All Plaintiffs asked was that Defendant grant his or her exemption from the vaccine mandate based on religious beliefs or a doctor's opinion. These Plaintiffs lost their jobs, their sense of self-worth, their dignity, their pride, and their ability to provide for their families all because they chose their faith or their own doctor's opinion over the demands of their employer and its desire to purge its payroll of the unvaccinated.

Defendant appears to excuse itself from the mandates of federal anti-discrimination statutes by claiming the sheer number of exemptions exclude it from discussing reasonable accommodations or undertaking the interactive process or doing an individualized undue hardship analysis. Despite receiving over 600 million dollars in free money from federal, state and local governments and the ultimate number of exemptions Defendants had to deal with (352 down to 94) after Defendant denied exemptions and people got the vaccine. Defendant never once changed course and complied with federal law. To illustrate how fantasy is urged when reality dictates that Defendant's entire process was a sham, consider the following: Defendant claims it was overburdened with 352 exemptions. All of these exemptions were dealt with according to the Defendant's chief legal counsel in one day from 8:00 a.m. until 6:00, 6:30 p.m. Doing basic math, if the exemption committee took no breaks, they spent less than two (2)

minutes on any one exemption (see arbitration testimony of Michael Cetra, Esquire, 4/4/23 at 128, attached hereto as Exhibit "2") this is roughly a 90 second review and is what Defendant's claim was individual, careful and consistent consideration in accordance with the criteria being applied by the Committee and with the decisions and treatment accorded to similarly situated employees (See ¶41 of Affidavit of Michael Cetra, Esq at p.12).

Defendant also claims fictitiously that Defendant engaged in the interactive process with each employee. Nothing could be further from the truth. Defendant's "interactive process" was nothing more than get the vaccine or get fired. (See Declarations attached to Plaintiffs' Motion for Class Certification).

Defendant also raised the argument that there was no accommodation available and the special difficulty of covid accommodation. While Plaintiffs appreciate the pages dedicated to exaggerating conflating Defendant's difficulties, the clear reality is nothing mattered to Defendant except get the vaccine or get out. The simple truth is the cost of a reasonable accommodation, as evidenced by the chosen few who received exemptions based upon job title and essentialness of employee, was one dime and one nickel. Even if Defendant granted all 352 exemptions, the total cost of reasonable accommodations was less than fifty-three ($53.00) dollars (352 exemptions $X$ cost of a mask 15 cents).

Defendant created an exemption process that confuses fiction with reality. Now Defendant urges this Court to apply its fantasy to 94 Plaintiffs who were wrongfully terminated thereby depriving Plaintiffs of a speedy and judicially efficient resolution of their claims for violations of Title VII or the ADA. Buying into the fiction espoused by Defendant and its counsel is akin to adding insult to injury. Defendant knows what it did ran afoul of Title VII and the ADA. Why else would Defendant purchase 15 million dollars of insurance to cover these

claims just months before its mandate took effect. Defendant created an exemption process that actively lends itself to resolution by class action. Defendant's chief legal officer and legal counsel designed an exemption process that did exactly what is sought to accomplish. Deny as many exemptions as possible and force as many Plaintiffs as possible to get vaccinated or be terminated.

Plaintiffs' counsel implores this Court to distinguish between fiction and fact. The true facts are 94 Plaintiff lost their jobs because the Defendants designed a system that presented Plaintiffs with a true Hobson's choice: Follow your faith or listen to your doctor and be fired. The choice is simple. Do as we say or be fired. Anti-discrimination statutes like Title VII and the ADA, were designed, implemented and enacted as law to prevent this exact scenario. Approving class action status will be the most fundamentally fair and judicious way to resolve these claims. To rule otherwise will certainly create the exact reasons why class actions are designed.  94 cases; 94 mediations; 94 sets of discovery; 94 sets of depositions; 94 motions to dismiss; 94 motions for summary judgment;  94 jury selections; 94 trials; 94 verdicts; 94 appeals.  Class action approval will allow and promote consistent results, reduce the likelihood of inconsistent results and promote judicial economy.

Consider the following: jury verdict form

1. Did Defendant discuss reasonable accommodations?

    ___ Yes        ___No

2. Did Defendant have an undue hardship?

    ___ Yes        ___No

3. If no, dollar amount to be determined by mediation or at a later time.

Defendant is doing exactly what they are paid handsomely to do: Make mountains out of mole hills. Except the Defendant created the mole hills too. To reward Defendant with a ruling that class action is not appropriate will only delay and clog up the court system with almost 100 cases that share so many commonalities that class action status is the only logical, sensible and judicious remedy.

The cases cited by Defendant's Brief are clearly distinguishable and are not binding precedent on this Court. This Defendant repeatedly admitted through chief legal counsel and exemption committee that Plaintiffs' religious beliefs were both sincere and valid. Defendant admitted these facts and cannot now complain it is unfair to do so, especially now that Defendant fired 94 people. Defendant's unique set of admissions, exemption processes, accommodations to those chosen few, and the lack of undue hardship distinguishes this case from any other district court decision denying class action status. Plaintiffs are simply using Defendant's words and actions against them with a process they created and implemented. Plaintiffs are simply asking the court to approve class action status for all Plaintiffs in this case.

WHEREFORE, Plaintiffs and putative Plaintiffs respectfully submit that Class Action status be granted by this Honorable Court.

Dated: 6/17/24

Respectfully submitted,

The Welsh Law Group, LLC

_____
James L. Welsh, III
PA I.D. #58790
Counsel for Plaintiffs